Strong, Receiver, vs. Hooe, imp.

Res Adjudicata. *(1) General rule.* *(2, 3:2) Rule applied to action by receiver appointed in former suit.*

Equitable Defenses. *(3) Loss of fund appropriated to pay mortgage in suit, by reason of injunction granted in former suit, and neglect of the receiver appointed therein.* *(5) Fraud in inception of instrument sued upon.*

Pleading. *(4) Indefinite averments of answer construed most favorably for pleader, on general demurrer.* *(5) Amendment of answer after reversal.*

Remittal of Damages: New Trial. *(6) When respondent may avoid new trial by remitting part of the judgment.*

Judgment in Foreclosure: Homestead. *Providing for sale of homestead last.*

1. Every issue of fact involved and adjudicated in a suit, whether such adjudication be contained in the final judgment or not, is *res adjudicata* in a subsequent suit between the same parties or their representatives.

2. In an action by G. against L. & H., to restrain H. from paying to L., and L. from collecting, the amount of a note of H. to L. secured by mortgage, and for an accounting between the parties, G. alleged that, with the knowledge and consent of H., he had become a partner with L. in the performance of a certain contract made between H. and L.; that L. and H. had nevertheless conspired to settle all matters growing out of said contract in such a manner as to defraud G. of the sum due him for moneys expended and work done under such contract; that L. had released H. from the contract, and had taken the note and mortgage in question in full satisfaction for all moneys expended and work done under it; that *the amount of such note and mortgage was greatly in excess of the amount due L.;* but that H. was indebted to G. upon the contract in a large sum. H. answered denying that she ever knew or consented to G.'s becoming interested in said contract with L., and alleging that she settled with L. in good faith, and that *the amount named in the note and mortgage was actually due from her to L.* at the time of such settlement, etc. The court found as a fact, that a much larger sum than that named

in said instruments was due under said contract at the time of the settlement between L. and H.; that G. and L. had been partners in fact in the performance of said contract, and L. was bound to collect from H. the amounts advanced by G. in such partnership, but had omitted a large amount of such advances from his settlement with H.; and that H. had never consented to G. becoming a party with L. to the contract, and that the same was not in law assignable; and upon these findings it dismissed the action as against H., but appointed a receiver to collect the note and mortgage when due, and to divide the proceeds between L. and G. in certain proportions, and restrained L. from collecting said mortgage. In this action *by the receiver* upon the note and mortgage, H. alleges that at the time of her settlement with L. he induced her to believe that she owed him the full amount named in those instruments, but denies that in fact she owed him any sum whatever; and she therefore claims that the note and mortgage are *void for want of a consideration.* There is, however, no allegation of *fraud* on the part of L. in this transaction.  *Held,*

(1) That the question of H.'s indebtedness to L. in the amount of said mortgage at the time of its execution, is *res adjudicata* as between the parties to this issue; the plaintiff herein, as receiver, being the representative of both G. and L.

(2) That as the record of the former suit is made, by reference, a part of H.'s answer in this action, it conclusively appears from such answer that said note and mortgage are valid securities for the sums named therein, with interest.

3. At the date of said mortgage, H. leased certain property to one K.; and the payments of rent provided for by the lease were made to correspond in amounts and times with the payments to L. provided for in the mortgage, and such rents were, by the terms of the lease, payable to L. to be applied in payment of such mortgage, until the same should be fully paid, and afterwards to H., her heirs or assigns.  There is no language in the lease or mortgage declaring such rents the sole fund from which the mortgage was to be paid.  *Held,*

(1) That the clause in said lease making the rents payable to L. is, at most, a *collateral* security for the payment of the mortgage debt.

(2) That if any payment of rent was made to L. *before* the commencement of the suit by G. above mentioned, that fact should have been made to appear in that action, and it cannot now be set up by H. in the present action.

(3) That even if H. (as well as L.) was prevented by the injunction order from collecting the rents which became due upon such lease after that suit was determined, yet H. might have applied to the court for the appointment of a receiver to collect the rents, or for an order on the present receiver, after his appointment, directing him to make such col-

lection; and as she failed to do so, she is not entitled to have the rents which have accrued and remain uncollected, deducted from the amount otherwise due on the mortgage.

4. It is alleged in H.'s answer herein, that a portion of the rent accruing under said lease "has been by said L. collected, and should have been credited on said note and mortgage, over and above the amount credited thereon as set forth in the complaint, the exact amount of which she is not informed of, but believes the same to be $100." *Held,*

(1) That if L. has collected rents on said lease since the injunction order (and in violation thereof), they should be allowed to H. and deducted from L.'s share of the proceeds of the note and mortgage.

(2) That although the answer does not show that the $100 there spoken of has been collected since the determination of the action by G., and might, on motion, have been required to be made more definite and certain in that respect, yet, in the absence of such a motion, H. should have been allowed to prove that such was the fact; and it was error to refuse to receive any evidence under this defense.

5. When the cause is remitted, if H. shall ask to amend her answer so as to charge *fraud* in the inception of the note and mortgage, and shall by affidavit make a *prima facie* case, the trial court should allow such amendment.

6. If no such amendment is asked, and plaintiff remits $100 from the principal of the mortgage, judgment should go in his favor for the reduced sum, without a new trial.

7. In either case, H. should be allowed to show, if she can, that the mortgage includes a *homestead*, and the judgment should conform to the fact as found.

APPEAL from the Circuit Court for *Iowa* County.

Action to foreclose a mortgage of real property executed by *Emilie R. Hooe* to secure the following note:

" $2,350. MINERAL POINT, WIS., *July 29, 1872.*

" For value received, I promise to pay J. M. Lockwood, or order, two thousand three hundred and fifty dollars, with interest at the rate of seven per centum per annum from this date, at the times following, to wit.: one hundred dollars on the first day of August, 1872; and thereafter, and after the year 1872, one hundred dollars on the first day of each February, May, August and November in each year, until the whole of said principal sum shall be paid, and all payments

shall be applied first to any accrued interest, and the balance in liquidation of the principal, until the whole principal and interest shall be paid, and if any two of such payments shall remain due and unpaid for the period of one month after the last one thereof shall, by the terms hereof, be due and payable, then the whole of the principal sum of this note remaining unpaid shall thereupon and thereby become due and payable.

"EMILIE R. HOOE.

"Witness, MOSES M. STRONG."

In 1872, one Warren E. Gates commenced an action in the circuit court for Iowa county, against the above named J. M. Lockwood and *Emilie R. Hooe,* to restrain Lockwood from selling or disposing of the mortgage here in suit; to restrain *Mrs. Hooe* from paying said mortgage to Lockwood; for an accounting between said Lockwood and said Gates; and for an accounting between said Gates and Lockwood and *Mrs. Hooe.* The case made in the complaint in that case was, in substance, as follows: That Gates and Lockwood were in fact partners in a certain contract for the repair and running of *Mrs. Hooe's* grist mill, although the contract was in form between *Mrs. Hooe* and Lockwood alone; that *Mrs. Hooe* was aware of and had given her consent to the transfer by Lockwood to Gates of an interest in that contract, and had recognized Gates as jointly interested with Lockwood therein; that, notwithstanding this knowledge and consent on her part, and notwithstanding she well knew that Gates had put a large amount of money into the repairs of the mill, she and Lockwood had fraudulently conspired together to cheat Gates, and had settled all matters growing out of the mill contract, and Lockwood had released *Mrs. Hooe* from that contract, and had taken the mortgage in suit here directly to himself, in full satisfaction of all moneys expended or work done under the contract; that in arriving at this settlement, Lockwood and *Mrs. Hooe* knowingly and fraudulently omitted from the accounting a large part of the money invested by Gates in the mill

under the contract, including new machinery furnished by him and put in the mill, and of which *Mrs. Hooe* got the benefit by getting her mill, with the new machinery in it, back into her own possession; that the amount for which the mortgage was given was greatly in excess of the amount due from *Mrs. Hooe* to Lockwood, but that she was indebted upon the contract to the plaintiff in the sum of $4,200, and that Lockwood, nevertheless, had assumed to settle with her for everything done under the contract, and release her from all liability under it, either to Gates or himself.

The answer of *Mrs. Hooe* in that suit, so far as it is material here, denied the fraud; denied that she knew or consented that Gates might be interested with Lockwood in the contract; admitted that she settled with Lockwood and gave him the mortgage in suit; but alleged that she settled with him in good faith, and that the amount stated in the mortgage was actually due from her to him. It further alleged that there really was a much larger sum due from her to Lockwood than the amount named in the mortgage; but that Lockwood voluntarily released her from the payment of the excess over that amount.

The answer of Lockwood, so far as it is important here, did not materially differ from that of *Mrs. Hooe.*

The case was referred for trial, and was duly tried before the referee, and his findings of fact and conclusions of law were duly made and filed in said circuit court May 1, 1873. He found that Gates and Lockwood were in fact associated together in the mill contract; that Gates had invested a large sum of money in repairs on the machinery put in it, which was not included in the settlement between Lockwood and *Mrs. Hooe,* but that *Mrs. Hooe* had never assented that Gates should be interested with Lockwood in the contract, and that she was not bound to recognize Gates as interested therein; that at the date of the execution of the mortgage there was actually due from *Mrs. Hooe* to Gates and Lockwood, on the contract, more than $2,450, but that Lockwood had the right

to release *Mrs. Hooe* from all the debt over and above the $2,450, and that Gates was bound by Lockwood's acts in that respect; that on the 29th of July, 1872, Lockwood and *Mrs. Hooe* accounted together, and found $2,450 due the former on the contract; that on the same day this settlement was carried into effect by *Mrs. Hooe* paying Lockwood $100 in cash, and giving him her promissory note, above set forth, for $2,350, secured by the mortgage here in suit, upon her mill property and other lands; that said mortgage was the joint property of Gates and Lockwood; and that they were entitled to the proceeds in the following proportions: Lockwood, $1,758.58, and Gates, $769.69.

As conclusions of law, he held, that as *Mrs. Hooe* had settled with Lockwood without any fraudulent acts or purpose on her part against Gates, the action should be dismissed as to her, with costs against the plaintiff, and that the mortgage should be divided between Lockwood and Gates, in the proportion of $1,758.58 to Lockwood, and $769.69 to Gates.

Both parties excepted to the report. On the hearing in the circuit court, that court found as facts, that *Mrs. Hooe* actually owed on the mill contract, on the day the mortgage was executed, $6,111.20; that under the settlement made by her with Lockwood, by which Gates was bound, Gates and Lockwood jointly suffered a loss growing out of that contract and settlement, of $3,636.92; that Lockwood was insolvent, and there was no source from which the plaintiff could obtain any part of the moneys due him, except this mortgage; that *Mrs. Hooe* had never contracted with Gates, and her contract with Lockwood was not in law assignable by the latter, and therefore Gates had no claim as against her for the advances made by him, Lockwood being the only person she was bound to recognize or settle with; that Gates and Lockwood were partners in the work done on the mill under the contract, and that it was Lockwood's duty to collect Gates' advances as well as his own; that he did not do so; that one item of over $1,700

for new Leffel wheels put into the mill by Gates, and of which *Mrs. Hooe* got the benefit, should have been collected by Lockwood from *Mrs. Hooe*, but that he did not collect it, and that amount was wholly omitted from the mortgage, and expressly excluded by *Mrs. Hooe* and Lockwood from the settlement.

As conclusions of law, the court held that the complaint should be dismissed, as against *Mrs. Hooe*, and that *Orville Strong*, the plaintiff in this action, should be receiver to take and collect the mortgage and divide the proceeds between Lockwood and Gates in the following proportion: to Lockwood, $624.74; to Gates, $1,849.54. Judgment was subsequently entered in pursuance of this finding, and from that judgment no appeal has been taken.

The mortgage remaining unpaid, this suit was commenced about August 26, 1874. The complaint is in the usual form, but sets up, in addition to the usual averments, a brief history of the appointment of the plaintiff as receiver, and a copy of the decree of the circuit court of Iowa county appointing him such, and providing for the distribution of the proceeds of the mortgage.

None of the defendants answered, except *Mrs. Hooe*. Her answer was as follows: 1. It admits the making of the note and mortgage in suit. 2. It sets up the original contract between *Mrs. Hooe* and Lockwood, relating to the repair of her mill, etc. 3. It alleges that the settlement between *Mrs. Hooe* and Lockwood, at the time the note and mortgage were given, was not a real but a pretended settlement; that Lockwood made her believe that she was indebted to him for miller's wages about $2,450, for which she paid him the $100 and gave him the note and mortgage in suit; that in fact she did not owe him anything for such wages, and there was no valid consideration for the note and mortgage; and that, being anxious to pay Lockwood the sum she then believed she owed him, she was induced by him, for the purpose of providing a fund to meet

her liabilities to him, to let the mill property to one Karn, by a certain lease, which is set out at length in the answer. [This lease provided that Karn should pay the rent in certain install- ments corresponding in amounts and dates with the payments provided for in the note and mortgage; and that such rents should first be paid to Lockwood to be applied upon the mort- gage, and after the mortgage debt was discharged, should be paid to *Mrs. Hooe*, her heirs and assigns. Neither the lease nor the mortgage, however, contains any provision that the mortgagee is to look to the lease solely for payment of the mortgage; while the mortgage contains the same provision found in the note as to the whole sum becoming due and pay- able in case of a default in payment of any two installments for one month after the last one of the two became due.] The answer further alleges that it was understood between *Mrs. Hooe* and Lockwood, at the time said lease was made, that it was done to create a fund out of which to pay the note and mortgage; that Lockwood took the note and mortgage with that understanding, and knowing that *Mrs. Hooe* had no other fund out of which to pay them; that all this was well known to Gates and to the receiver; that it was Lockwood's duty to collect the installments of rent as they became due, and credit them upon the mortgage; that after the appoint- ment of the plaintiff as receiver, that duty devolved upon him; and that at the time of the commencement of this action, $900 had become due upon the lease, which should have been col- lected from Karn by Lockwood or the receiver, and for which plaintiff claims credit upon the mortgage, if that be held valid. 4. It alleges that rents accruing under said lease to the amount of $100 have been collected by Lockwood, in ad- dition to the amount for which credit is given in the com- plaint. 5. It sets up the suit by Gates against *Mrs. Hooe* and Lockwood, in which plaintiff was appointed receiver; prays that the record therein may be considered a part of this answer; and alleges that the issue of an injunction in that

case, as prayed for by Gates, restraining *Mrs. Hooe* from paying the note and mortgage to Lockwood, and restraining Lockwood from collecting the same, and appointing a receiver, operated to prevent both *Mrs. Hooe* and Lockwood from collecting the rents becoming due on the lease, and thereby prevented the payment of those sums on the note and mortgage; and that but for these causes and the failure of the receiver to collect such rents according to his duty, the same would have been collected, and there would have been nothing due on the note and mortgage. 6. It alleges that in said last mentioned action it was adjudged that *Mrs. Hooe* owed nothing to Gates, and she recovered costs against him for that reason. 7. It denies that *Mrs. Hooe* is indebted to Gates or the receiver in any sum whatever; and alleges that the note and mortgage are null and void; that a fund was provided for the payment of the note and mortgage at the time they were made; and that in consequence of the injunction obtained by Gates, and the neglect of the receiver to collect the rents, *Mrs. Hooe* has been damaged to the amount of $2,000. 8. It demands, by way of relief, that the mortgage be declared void; that, if it be declared valid for any purpose, *Mrs. Hooe* have credit for the rents that had accrued up to the commencement of the action, with interest thereon according to the terms of the lease; and that she have further credit for all damages caused by said Lockwood and said receiver in not carrying out the terms of the lease, and for injuries done to the property by their neglect; and there is a further demand for general relief.

There was a reply denying generally all matters alleged in the answer by way of counterclaim.

At the trial, the plaintiff offered in evidence the note and mortgage, and the judgment roll in the case of Gates v. Hooe and Lockwood; and, having introduced testimony that no part of the mortgaged premises was a homestead, he rested. The court refused to permit the answering defendant to offer any

evidence under the answer, and refused to order a reference, as asked by her. It, however, filed a finding of facts, which included those alleged in the complaint, and also the following: 1. That neither the plaintiff nor Gates had ever interfered, by injunction or otherwise, with *Mrs. Hooe's* possession of the mortgaged premises or that of her tenants, or prevented her collecting the rents therefor; that she had never assigned such rents to Lockwood; and that she could have required such rents to be paid to herself instead of to Lockwood. 2. That the question whether *Mrs. Hooe* was indebted to Lockwood in the full amount named in the note and mortgage at the date of their execution, and the question of any payments made on them up to the commencement of the action by Gates against her and Lockwood, were fully adjudicated in that action, which adjudication the court held to be binding in this suit. 3. That no part of the mortgaged premises constituted a homestead. Thereupon judgment of foreclosure was rendered according to the prayer of the complaint.

From this judgment *Mrs. Hooe* appealed.

For the appellant, a brief was filed by *Wilson & Lanyon,* her attorneys, and one by *D. H. Johnson,* of counsel; and the cause was argued orally by *D. H. Johnson, Alexander Wilson* and *Calvert Spensley.* They contended, in substance, 1. That the suit in which the plaintiff was appointed receiver did not put in issue the validity of appellant's note and mortgage, the bill having been dismissed as to her, and the judgment having merely determined the equitable ownership of the mortgage as between the other two parties. 2. That fraud and failure of consideration were sufficiently pleaded in respect of the instruments in suit, and proof in support of these averments should have been admitted. The receiver does not hold the note for the benefit of creditors or other strangers to its inception, but for the benefit of the payee, Lockwood, and his partner, Gates. It is clear that to the extent of Lockwood's interest in this foreclosure, any defense that would be good against

him is good against the receiver, who represents him. *Allyn v. Boorman, Receiver*, 30 Wis., 684. 3. That the loss of rents alleged in the answer constituted, on the face of the answer, a good defense. By the terms of the lease the rents were made payable directly to Lockwood, and not to the appellant; and this was an equitable assignment of the rents to him. *State ex rel. State Bank v. Hastings*, 15 Wis., 75. The injunction restrained Lockwood from collecting the amount secured by the note and mortgage as it fell due in installments, and also restrained the appellant "and all others acting in aid or assistance of her," from paying the note and mortgage to Lockwood. The receiver, when appointed, was directed to collect the amount due on the note and mortgage, and pay it over to Gates and Lockwood in certain proportions. He knew that the rents of the mortgaged premises had been set apart for the extinguishment of the mortgage debt. He represented Lockwood. He was bound to take any reasonable and proper measure which Lockwood could have taken for the collection of the note and mortgage. He knew that, on account of the injunction, a considerable arrearage of rent had accumulated; and he made no attempt to collect it, but suffered it to be lost. It seems clear that the appellant was damaged by the injunction, and by the plaintiff's subsequent neglect of duty, to the amount of the rent lost thereby, and that so much ought to be deducted from the recovery in this case. 4. That the answer of partial payment contained a good defense. 5. That if the answer failed to state with sufficient clearness the errors and misrepresentations in the settlement of Lockwood with the appellant, the proper remedy was by a motion to make more definite and certain, and not by a general demurrer. *Newman v. Kershaw*, 10 Wis., 333; *Bateman v. Johnson*, id., 1; *Markwell v. Supervisors*, id., 73; *Clark v. Langworthy*, 12 id., 441; *Kuehn v. Wilson*, 13 id., 104; *Morse v. Gilman*, 16 id., 504; *Spence v. Spence*, 17 id., 448; *Horn v. Ludington*, 28 id., 81. 6. That the appellant should have

been allowed to prove that a part of the mortgaged premises constituted her homestead. Laws of 1870, ch. 133.

For the respondent, a bill was filed signed by *Reese & Carter* as his attorneys, and *Wm. E. Carter*, of counsel; and the cause was argued orally by *Wm. E. Carter* and *Richard Carter.*

LYON, J. The ruling of the learned circuit judge rejecting all evidence under the answer is equivalent to sustaining a general demurrer to the answer interposed *ore tenus* at the trial. The question is, therefore (and it is the principal question in the case), Does the answer state facts, which, if proved, would constitute a defense to the action, in whole or in part?

It is alleged in the answer that the note and mortgage were given without consideration, and pursuant to a pretended settlement with Lockwood, who (quoting from the answer) "made this defendant believe that according to the terms of said contract she was indebted to him for miller's wages in the sum of about twenty-four hundred and fifty dollars, and induced her at that time to pay or cause to be paid to him, the said Lockwood, the sum of one hundred dollars, and also at the same time, in order to secure the balance of said alleged indebtedness, viz., $2,350, induced her to execute the note and mortgage described in the complaint herein; whereas in truth and fact she did not owe him anything for such wages, and there was no valid consideration for said note and mortgage; but this defendant, believing the representations of said Lockwood," etc. This ordinarily would be a traversable averment, which the defendant would have a right to prove, and which, when proved, would necessarily defeat the action; for it goes to the validity of the whole mortgage debt. This is so because of the alleged want of consideration, and not because of fraud, for none seems to be charged in the pleading. The averment may be true, and still Lockwood may have honestly believed that *Mrs. Hooe* owed him $2,450. No unfair or de-

ceptive means, no falsification of accounts, are claimed to have been resorted to in order to make the defendant believe she owed a debt of $2,450, when in fact she owed nothing; and it seems just as credible that Lockwood was honestly deceived, as it is that *Mrs. Hooe* was honestly deceived.

But proof of the alleged want of consideration for the securities should have been received, unless there are averments in the answer which show that it was not admissible.

The judgment roll or record in the case of Gates v. Lockwood and Hooe is made a part of the answer by reference, and, the same having been introduced in evidence by the plaintiff, we are fully apprised of its contents. The parties in that case and in the case under consideration are the same, for the receiver named as plaintiff in this case represents Gates and Lockwood. Hence, each question of fact involved in the issue and adjudicated in the original action, is *res judicata* in this case. It is quite immaterial whether such adjudication is contained in the final judgment or not. If the court decided the question, that is sufficient. The fact found may result in dismissing the action, or it may result in a judgment for the plaintiff; yet, in either case, the finding is conclusive between the same parties in any future action. *Ely v. Wilcox*, 26 Wis., 91, is authority for these views, if any authority is necessary to support a doctrine which is almost or quite elementary.

The action of Gates v. Lockwood and Hooe was for an accounting between the parties. It was essential to a full determination of the questions involved in it, that the court should ascertain whether *Mrs. Hooe* was indebted to Gates and Lockwood, and, if so, the amount of such indebtedness, and the respective interests of Gates and Lockwood therein; and, should it be found that Gates had no claim against *Mrs. Hooe*, then it remained to be determined whether Gates had any interest in the indebtedness of *Mrs. Hooe* to Lockwood. If he had such interest, it was essential to the complete determination of the action that the court should ascertain the

amount of such indebtedness, and the respective interests of Gates and Lockwood therein.

It was determined that Gates had no claim against *Mrs. Hooe*, but that if she owed Lockwood on account of the original contract between them, Gates had an interest in that demand; and it was also determined that when she gave the note and mortgage in suit, she really owed Lockwood a much larger sum than that for which they were given. But, because Lockwood could not make a valid assignment of an interest in his contract with *Mrs. Hooe*, so as to render her liable on it to Gates, without her consent (which she never gave), it was held that it was competent for Lockwood to accept a less sum from her than was actually due on the contract, in full satisfaction thereof, and that Gates could not be heard to object to the transaction, if there was no fraud. This ruling deprived Gates of all right to relief against *Mrs. Hooe*, but it did not deprive her of the right to contest the amount of her indebtedness to Lockwood, which, as we have seen, was involved in the action. It necessarily resulted that on the final hearing and determination of the cause the complaint was dismissed as to her, but not until the issue was tendered and an opportunity given her to deny her indebtedness to Lockwood on the note and mortgage. She did not make the denial, but, on the contrary, in her sworn answer she indignantly repelled the charge in the complaint that her indebtedness was not to Lockwood but to Gates, and affirmed that when she executed the securities she owed Lockwood the full amount for which they were given, and even more. Her answer prevailed, and the findings and judgment in the action accord therewith.

We are of the opinion, therefore, that it conclusively appears from the answer of *Mrs. Hooe* in the present case, that the note and mortgage in suit are valid securities for the sum therein expressed, and interest, and the averment that they were given without consideration is not available to her.

II.   We now come to consider the allegations in the answer
of the appellant in respect to the payment of rent reserved in the
lease executed by her to the defendant Karn.   This lease was
executed at the same time the note and mortgage in suit were
given, and the payments  of rent were made to correspond in
amount and time with the payments provided for in such note
and mortgage.   The material portion of the lease is as fol-
lows:   " And it is mutually agreed by both parties, and as a
consideration of his release of his rights and claims to said
premises, that all of said rents shall be paid to James M.
Lockwood, of said county of Iowa, and applied in payment
of a note this day executed to the said James M. Lockwood,
or order, for the sum of two thousand three hundred and fifty
dollars, payable in installments of one hundred dollars each,
on the first day of August next, and on the first days of each
February, May, August and November, in each year (except
November, 1872), until the whole of said note is paid; and
the balance of said rents, after the full payment of said note,
to be paid to said party of the first part, or her heirs or as-
signs."   The question is, whether *Mrs. Hooe* is entitled to a
deduction from the amount of the note and mortgage by
reason of the failure of Lockwood or the plaintiff (the re-
ceiver) to collect such rents.

But one payment of rent became due before the action of
Gates vs. Lockwood and Hooe was commenced and the injunc-
tion order made therein.   If that payment was made to Lock-
wood before that time, it should have been made to appear in
that action, for reasons already stated.   After the injunction
was granted, Lockwood could not be in default for failure to
collect the rents, for the injunction restrained him from doing
so.   The circuit judge held that there was nothing in the lease
or the injunction which prevented or restrained *Mrs. Hooe*
from collecting the rents, and hence, that she was in default
for failing to do so, and not the receiver.

Clearly the rents reserved in the lease were not the sole
VOL. XLI. — 43

fund provided for the payment of the note and mortgage. The clause making such rents payable to Lockwood was, at most, collateral security for the mortgage debt. It may be conceded that before the injunction Lockwood could have enforced payment of the rents, and that the receiver, after his appointment and qualification, might have done the same thing. The claim of *Mrs. Hooe* that she was prevented from doing so by the terms of the lease may also be conceded, although that is a very doubtful proposition. Conceding all this, still we think it was the duty of *Mrs. Hooe* to have applied to the court for directions to the receiver to collect the rents, or at least she should have requested the receiver to enforce payment thereof. The allegation in the answer that the receiver knew before his appointment what were the terms of the lease, is insufficient to place him in default. Besides, nearly a year and a half intervened between the injunction and the appointment of the receiver. Because *Mrs. Hooe* could at any time have applied to the court to appoint a receiver to collect the rents, or to direct the plaintiff, after his appointment, to collect the same, but failed to do so, we think she is in equal default with the other parties, or the receiver, in that behalf, and can have no remedy against either because the rents remain uncollected.

III. It is alleged in the answer that "a portion of said rent has been by said Lockwood collected, and should have been credited on said note and mortgage over and above the amount credited therein as set forth in the complaint, the exact amount of which she is not informed of, but believes the same to be one hundred dollars." This averment is indefinite as to time, and on a proper motion the court would doubtless have required the appellant to make it more definite and certain. But no such motion was made. We cannot regard the averment as a nullity. We think the appellant should have been permitted to prove under it that Lockwood collected rents after the injunction was issued, or, at least, after the de-

termination of the original action. That such collection would have been a violation of the injunction is true, yet, if he received rents, although in violation of the injunction, the amount should be allowed to *Mrs. Hooe* and deducted from his share of the proceeds of the note and mortgage. This appears very plain to our minds. Hence, we find an allegation in the answer which, although somewhat indefinite, contains a valid defense or counterclaim to a portion of the mortgage debt, and which, therefore, is not reached by a general demurrer. Because this allegation was not excepted from the ruling of the court excluding evidence under the answer, the judgment in its present form cannot be sustained.

Whether a new trial will be necessary in the circuit court depends upon the proceedings in that court after the cause shall be remanded. On a proper showing, we think that court should permit *Mrs. Hooe* to amend her answer so as to charge fraud in the inception of the note and mortgage. But the court will require her to make out by affidavit a *prima facie* case of fraud before doing so.

If the answer is not amended, and the plaintiff remits $100 from the principal of the mortgage, another trial will be unnecessary, and judgment should go for the reduced sum.

In either case the appellant should be allowed to show, if she can, that the mortgaged premises included a homestead, and the judgment should conform to the fact as found.

*By the Court.* — Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.