ANDREW, Appellant, vs. SCHMITT and others, Respondents.

*December 4 — December 23, 1885.*

TRUSTS AND TRUSTEES: FORMER JUDGMENT. *(1) Failure to invest trust fund: Interest chargeable to trustee. (2) Action for breach of trustee's bond: Former judgment. (3) Safety of investment.*

1. Where a trustee is required to invest the trust fund in U. S. bonds or on real estate security, the interest which he might have obtained on real estate security of the proper character is the measure of his liability for a failure to invest the fund.

2. A former judgment in an action upon a trustee's bond for a breach of the condition " that he shall pay all moneys which it shall become his duty to pay as such trustee," by a refusal to pay over certain interest to the *cestui que trust,* is not a bar to another action upon the bond for a breach of the condition to keep the trust fund properly and constantly invested.

[3. Whether a trust for the investment of money " in U. S. bonds or in other safe manner with ample real estate security," does not require that any investment other than in U. S. bonds shall be absolutely safe and the security absolutely ample, and make the trustee an insurer of the fund, both principal and interest, or at least that such other investment shall be as safe as one in U. S. bonds, not determined.]

APPEAL from the Circuit Court for *Grant* County.

Action upon the bond of a trustee, for a breach thereof. The facts are stated in the opinion.

For the appellant there was a brief by *Bushnell & Watkins,* and oral argument by *Mr. Bushnell.*

For the respondents there was a brief by *Carter & Cleary,* and oral argument by *Mr. Carter.*

ORTON, J.   It appears that prior to the 4th day of March, 1874, the plaintiff, *Christina Schmitt* (now by subsequent marriage *Christina Andrew),* and the defendant *Andrew Schmitt,* had been husband and wife, and were divorced, and that, in accordance with the judgment of divorce, there was a division of their property in such manner that the sum of

$4,200 was left in the hands of said *Andrew Schmitt* in trust for their five children, in shares as follows: To their daughter Louisa, $1,000, and to their four other children, $800 each,— to be paid to them, respectively, as their daughters arrive at the age of eighteen years, and as their sons arrive at the age of twenty-one years. Until such respective portions of said fund are to be so paid it was to be kept by said *Andrew* "constantly invested in United States bonds, or in other safe manner, with ample real estate security, at the best rate of interest he can possibly obtain, with such interest payable annually," which said interest was to be paid by him to the said *Christina Schmitt*. On said 4th day of March, 1874, the said defendant *Andrew Schmitt*, together with the other of said defendants as sureties, executed to the said children, and to said *Christina*, the wife, their bond, in the penal sum of $10,000, conditioned that the said *Andrew Schmitt* keep said fund so invested, and to pay said children when they arrive at such age their respective portions thereof, and to pay said *Christina Schmitt* such interest as aforesaid. In respect to all of said fund, except the sum of $1,950, it was already loaned out on bond and mortgage, and the interest was duly paid, and the principal has been in most part, if not entirely, paid to the children, and no complaint is made. It is only in respect to the sum of $1,950, as part of the fund, and received by the said *Andrew Schmitt* in money, that the breach of the condition of said bond is assigned in this action, that the said *Andrew* had not kept the same "constantly invested in United States bonds, or in other safe manner, with ample real estate security," whereby the plaintiff had lost interest thereon at the rate of ten per cent. per annum, which the said *Andrew* might have obtained.

The answer of the defendants puts in issue the allegation of this breach, and substantially alleges that the said *Andrew*, immediately after the execution of said bond, on

or about the 27th day of March, 1874, loaned the said fund to one Michael Jacobi at ten per cent. interest, payable annually, and received as security therefor a mortgage of said Jacobi and wife on certain 100 acres of land in Grant county, which was ample security for the payment of both the principal and interest of said loan; and that the interest on said loan was promptly paid by the said Jacobi for the first three years, and the said plaintiff received the same, and the further sum of $120 had been paid to said plaintiff since that time. On failure of the payment of such interest by said Jacobi, in March, 1878, the said *Andrew* caused said mortgage to be foreclosed, and bought in the mortgaged premises for the benefit of the plaintiff and said children at the sum of $1,950, and has since held and leased the same for their benefit, the rents of which have not since reimbursed the said *Andrew* for costs, taxes, expenses, improvements, etc. The good faith of the said *Andrew* in so managing said fund is alleged.

The main issue in the case was, then, the safety of said investment, or the sufficiency of said real estate security at the time said loan was made. The facts of said loan and the payment and nonpayment of the interest, as above stated, were proved on the trial, and there was testimony showing that the investment was not safely made, and that the security by said mortgage was quite inadequate and insufficient when taken by the said *Andrew*, which warranted the jury in so finding. There was testimony that the land was rough and uneven, lying over ridges and in valleys, with less than half broken up for cultivation, and with very poor and cheaply constructed buildings and poor fencing, and was worth in market less than the principal of said loan when said loan was made, and has continued to become worth less and more unproductive ever since. Even under the liberal rule of "good faith and a sound discretion," we think the jury in this case was justified in finding

that this security was not ample, and that an ordinarily prudent man, knowing the land, would not have considered it ample security for the loan, at the time the mortgage was given, as the jury found by their special verdict. It may not be necessary to inquire whether this trust ought to be governed by this rule, inasmuch as the jury has, upon sufficient evidence, according to this rule, found a breach of the condition of the bond in this respect; but the language " other *safe* manner, with *ample* real estate security," is very strong, and would seem to require the highest degree of care, diligence, judgment, and discretion in making the investment, if not its absolute security.

The trust, so far at least as the principal of the fund is concerned, is for the benefit of infant children, who can neither act for themselves nor be consulted, and it may be that the interest upon its investment is to be used for their support during infancy. The language "in United States bonds, or *other safe manner*," would seem to imply that such *other manner* of investment should be as safe as an investment in United States bonds. At the time the investment is made there should be no doubt or question but that such other manner is absolutely safe, and that the real estate security is ample; and it is not clear that these conditions do not require the other manner to be absolutely safe and the security absolutely ample, and make the trustee an insurer of the fund, both principal and interest, at least equal to its security if the fund had been invested in United States bonds; but this question we need not and do not decide. 1 Perry on Trusts, § 459; Hill on Trusts, §§ 369–371; *Marsh v. Hunter*, 6 Madd. 295; *Wiles v. Gresham*, 24 Law J. Ch. 264. The verdict of the jury in this case, however, as above stated, is supported, under the more liberal rule, by sufficient evidence.

The defendants having been held liable for this breach of duty on the part of *Andrew Schmitt*, the trustee, in so in-

vesting the fund, by which it has earned no interest and may be lost in whole or in part, it is immaterial to the plaintiff and the children what he has done with the mortgage or land. Having made the investment in violation of the terms of the trust and the conditions of the bond, both the plaintiff and the children have a right to look to the bond alone for their security, both for the principal and interest of the fund. Under the special verdict of the jury, that the fund was not invested in a safe manner with ample real estate security, the questions then were, At what rate of interest could it have been invested during the time of such default, in a safe manner with ample security? or, Should the trustee be chargeable with the interest which would have accrued upon United States bonds had the fund been invested therein, as allowed by the condition of the bond? or, In the absence of any evidence at what rate of interest the fund might have been loaned on ample real estate security, should he be chargeable with the common interest of seven per cent.?

There was once some question whether, in case of an alternative to invest "in stocks or on real estate security," the interest upon the stocks, and the value of the stocks if even above par, should be the criterion of liability. But now it seems to be settled that the interest which might have been obtained on real estate security of the proper character is the measure of liability in such a case. But if this is not ascertained, then the trustee would be chargeable with the common rate of interest and the whole of the principal. Hill on Trusts, § 374 and note 1; and § 379 and note. According to this rule, which we think is the just and correct one in this case, the jury found a general verdict in favor of the plaintiff for the sum of $591, after deducting the said $120, which would be slightly less than the legal interest on the fund for the time past of the default. The verdict will therefore not be disturbed, and this will be the

true rule hereafter, so long as the fund remains uninvested according to the conditions of the bond.

This disposes of this case so far as the merits are concerned, and there was but little contention on these questions. But the case was finally disposed of, and judgment rendered against the plaintiff of dismissal of her complaint, on the answer and proof of a former judgment in bar. It was alleged as a separate defense that on the 7th day of August, 1878, the said plaintiff brought suit against some of these defendants upon the same bond in the circuit court of the county of Dubuque, state of Iowa, and alleged in her complaint the same breaches of the bond as in this case, and that such allegations were denied, and that thereupon said cause was tried on its merits upon the said issue, and decided against the plaintiff and in favor of the defendants, and judgment so rendered,— which is insisted upon in bar of this action. Upon the record of said case in evidence, the circuit court held that said judgment was a bar to this action, and thereupon set aside said special and general verdicts of the jury, and rendered judgment against the plaintiff as aforesaid. From this judgment the appeal is taken.

The breach assigned in said former action was "that the said *Schmitt* entered upon said trust, received said money, etc., and loaned the same at the rate of ten per cent. interest, or could have done so, and received the interest on the same, etc., but has wholly neglected and refused to pay over the interest to said plaintiff." The answer, after a general denial, was that said money " has been safely invested in good real estate security, and that the interest thereon since said investment has been annually paid to the plaintiff, except the sum of $195, on which the party to whom said $1,950 was loaned has made default in the payment of the interest due in the year 1878, and for which interest said *Schmitt* has now an action pending for the recovery thereof, and, when so recovered, same will be promptly paid to plaintiff."

This is the only issue in respect to said fund of $1,950, and that most clearly is that *Schmitt* had loaned it at ten per cent. interest, and neglected and refused to pay said interest to the plaintiff.   The issue in this case is that he has not kept said fund constantly invested in United States bonds, nor in other safe manner, with ample real estate security.   The breach is of different conditions of the bond. In the former suit, it was for the breach of the condition "that he [*Schmitt*] shall pay, or cause to be paid, all moneys which it shall become his duty to pay as such trustee;" and in this suit it is the breach of the condition to keep the fund so constantly invested.   The facts shown in evidence in the former action do not appear in the record in this case, and we can only determine what those facts were from the evidence in this case of what they must have been in that suit in order to have warranted a judgment in that case against the plaintiff, and from what evidence would have been pertinent to that issue.   These facts were that the money had been loaned to said Jacobi, as stated above, at ten per cent. interest, payable annually, and that such interest had been paid to the plaintiff for the first three years, and that the interest due in March, 1878, had been sued for, and when collected would be paid.   There being no time stated in said bond when said interest should be paid, the defendant *Schmitt* was no doubt allowed a reasonable time in which to collect the same; hence as to that year's interest the suit was premature.   This was all there was of it, and it is very clear that the issues in the two actions are essentially different; and for that reason the judgment in that case cannot be a bar to this action. *Strong v. Hooe*, 41 Wis. 659; *Lathrop v. Knapp*, 37 Wis. 307; *Hardy v. Mills*, 35 Wis. 141; *Bergeron v. Richardott*, 55 Wis. 129. There could not have been any such issue in that case, because at that time the fund had, so far as then known, been safely invested, and the interest for three years had

been promptly paid, and for the year 1878 it was in suit and might have been collected, as stated in the answer in that action, and when collected might have been paid to the plaintiff. We think, therefore, that the circuit court erred in holding the judgment in that case a bar to this action, and in setting aside the said verdicts of the jury on the main issues in the case, and in rendering judgment in favor of the defendants.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment on the general verdict of the jury in favor of the plaintiff for the sum of $591, and interest thereon since the date of the former judgment in the case, together with the costs of the action.

As to investment of trust funds, generally, see 25 Am. Law Reg. 217.— REP.