LAU, Respondent, vs. HARDER, Appellant.

*November 10—December 8, 1936.*

For the appellant there was a brief by *McConnell & Schweizer* of La Crosse, and oral argument by *Charles H. Schweizer*.

*Frank Winter* of La Crosse, for the respondent.

NELSON, J.   On October 27, 1913, August Lau and Julia Lau, his wife (father and mother respectively of the plain-

tiff), made, executed, and delivered to one Richard Scher-merhorn a mortgage to secure the payment of a promissory note for $1,200 of even date therewith. The mortgage was received for record and recorded on the same day in the office of the register of deeds for La Crosse county. The note was to become due and payable five years after its date, and bore interest at the rate of five per cent per annum. The mortgage covered a farm situated in La Crosse county. On February 6, 1925, August Lau and Julia Lau, his wife, con-veyed to the plaintiff, by warranty deed, the premises covered by the mortgage. The consideration was $1 and the agree-ment of the plaintiff to pay to the said August Lau and Julia Lau, his father and mother, the sum of $100 each year, and furnish them with fuel and vegetables, flour, meats, and butter during their natural lives. It was covenanted in the deed that, at the time of the ensealing and delivery thereof, the grantors were well seized of the premises conveyed in fee simple and that the same were free and clear of all in-cumbrances whatever. For about two years before the deed was executed, the plaintiff had been working the farm for his aged parents. After the deed was delivered, the plaintiff operated the farm as owner and rendered the promised sup-port to his father and mother. August Lau, the father, died in 1927, and Julia Lau, the mother, died about a year later.

On April 28, 1915, the mortgage was duly assigned by the administratrix of the estate of Richard Schermerhorn, deceased, to one Emma Harpel, and the assignment was re-ceived for record and recorded on the same day in the office of the register of deeds for La Crosse county. On July 9, 1923, Emma Harpel died intestate, leaving the defendant as her sole and only heir at law, who became the owner and holder of the mortgage and the note secured thereby. Fore-closure of the mortgage was commenced on October 30, 1933. In the complaint in that action it was alleged that no

part of the principal had been paid and that no interest had been paid since the year commencing October 27, 1918. The plaintiff was represented in that action by Frank E. Withrow, an experienced and competent attorney. The plaintiff answered, denying "that the claim of the plaintiff is prior to the claim of the defendant, Richard Lau," admitting that there had been no payment of the principal of said note or interest upon said note since the 27th day of October, 1918, and alleging upon information and belief that the said note, together with interest thereon, had been fully paid and satisfied. Trial of that action was had to the court. The sole issue litigated was whether the note had been paid. The plaintiff sought to prove payment of the note by a certain witness who, for many years prior to about six years before the trial, had been a merchant in the city of La Crosse and authorized by the post-office department to issue postal money orders. He recalled that about fifteen, seventeen, or twenty years before the trial, August Lau purchased postal money orders from him; that such orders were made payable to a person named Schermerhorn,—possibly Richard Schermerhorn; that on one occasion, possibly eighteen or twenty years ago, Lau wanted to buy a money order, which he thought was for $186; that he told Lau that he would have to issue two orders, as he was prohibited from issuing an order for more than $100; that he advised Lau to buy a draft instead; that Lau told him it was for a mortgage; that he did not recall whether he had issued the orders; that Lau purchased money orders at regular intervals thereafter,— about every six months; that the last one which he could recollect was in the amount of $6, and that Lau at one time had stated to him that "this is the last payment I have got to make." The recollection of the witness was obviously hazy, uncertain, and indefinite. The court, on its own motion, continued the trial so that the plaintiff and his attorney

might be afforded an opportunity to discover or procure additional evidence tending to prove that payments on the mortgage had been made. No further evidence was obtainable. Upon being so advised, the court entered judgment of foreclosure in favor of Charlotte Harder, the defendant here.

Shortly after the year of redemption had expired this action was commenced. The complaint, among other things, alleges: That after the plaintiff acquired the farm he received no notice or information that the premises were subject to a mortgage until shortly before the foreclosure action was commenced; that, relying on his absolute ownership of the premises, he had made valuable and permanent improvements thereon, amounting to several thousand dollars, which he would not have made had he not believed that he was the absolute owner of the premises free of all incumbrances; that the defendant, by failing and neglecting for some eleven years to bring suit, to make any claim against the plaintiff, or to give plaintiff any information of her mortgage, was guilty of laches, rendering any judgment against the plaintiff, as assignee and grantee of the premises, unjust, unconscionable, and inequitable; and that, the defendant by failing to enforce her mortgage for some eleven years and until after the death of August Lau, the mortgagor, and until after his estate was distributed, the plaintiff was unable to prove that the mortgage indebtedness had been paid and also unable to compel the said August Lau to make good his warranty or to enforce the payment of the mortgage against the estate of said August Lau.

There are other allegations in the complaint of a purely evidentiary character. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendant thereupon duly answered. The defendant denied that the facts alleged in the complaint amounted to

laches on the part of the defendant; denied that the fore-closure judgment was unjust, unconscionable, and inequitable; alleged that the asserted laches could have been interposed as a defense in the mortgage foreclosure action and that failure to interpose it was due to the neglect and inadvertence of the plaintiff and his attorney.

Upon the trial of this action a transcript of the testimony taken in the foreclosure action was received in evidence. The deed from August Lau and wife to the plaintiff was also received. As before stated, it contained a covenant that the premises were free and clear of all incumbrances. The plaintiff was permitted to testify, over the objection of the defendant, that he was present at the time the deed was being prepared, and that his father, August Lau, in response to a question asked by one Ristow, as to whether the land was clear, said: "Yes, there is no debts on the place." The witness added: "He says he has got everything paid up." A letter written by Mrs. Harpel to August Lau under date of May 12, 1920, was received in evidence. It is as follows:

"I could not be in La Crosse to look after any property there and consequently would not want any money invested there to look after, much as I might like to help you out. I hope you find a good buyer in case you really sell. Thanking you for the interest."

A money-order receipt for $36, dated July 2, 1920, which was found among the papers of August Lau, was received in evidence. The name of the remitter or the payee was not written on the exhibit.

A letter from August Lau to Mrs. Harpel was received in evidence. It is dated Sept. 5, 1918, and is as follows:

"A few lines from August Lau you state weather you want the money longer or not we like to have it about three years longer if you posipel cant make it eny less than six persent I spose we will have to let it go at that, But if you can let it cheaper let us know."

Finally, the plaintiff introduced the following letter, written with purple ink and signed by August Lau:

"La Crosse, Wis., Oct. 18, 1918.

"Mrs. B. F. Harpel,

  "Washington, D. C.

"Enclosed find P. O. Money order for $60.00 in payment of interest due Oct. 27, 1918.

Respy yours,<br>Aug Lau."

This letter was found among August Lau's papers. The following notation was written thereon with black ink:

"Interest 6% from October 27, 1918, to Oct. 27, 1921, as agreed."

The deposition of the defendant showed, among other things, that since February, 1916, she had not resided in La Crosse; that Emma Harpel, her mother, died on June 9, 1923; that she did not return to La Crosse until the summer of 1933, when she went there to give attention to the foreclosure matter.

The court made numerous findings and concluded that at the time of the bringing of the foreclosure action the note and mortgage had been fully paid; that, by failing to give notice of her claim for some ten or eleven years, during which time the plaintiff had made valuable improvements upon the premises and during which time August Lau had died, depriving the plaintiff of the benefit of his testimony, the defendant was guilty of such laches as to render the enforcement of the foreclosure judgment unjust, unconscionable, and inequitable.

Despite the fact that the plaintiff did not assert in this action that the note and mortgage had been paid, that issue having been tried in the foreclosure action and the court having rightly found that that defense had no support in the evidence, the court concluded that the note and mortgage had

been fully paid. We need devote little time to that conclusion. It finds no reasonable support in the evidence. So the only question left for determination is whether the plaintiff made out a case of laches on the part of the defendant which in equity and good conscience should render the enforcement of the foreclosure judgment unjust, unconscionable, and inequitable. It has been considerately held by this court that "chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident, or the acts of the opposite party unmixed with negligence or fault on his part." *Stowell v. Eldred,* 26 Wis. 504; *Boring v. Ott,* 138 Wis. 260, 119 N. W. 865; *Laun v. Kipp,* 155 Wis. 347, 145 N. W. 183. It is not suggested by the plaintiff that at the time he answered in the foreclosure action or at the time that action was tried, he was ignorant of the fact that no payments, either of interest or principal, had been made by him during the time that he was the owner of the farm. He in fact admitted in his answer that no payments had been made on the mortgage since October 27, 1918, which was seven years before he obtained title to the farm; nor is it suggested that the defense of laches could not have been set up or interposed as a defense in the foreclosure action; nor that he was prevented from availing himself of that defense by fraud or accident or the acts of the plaintiff in that action, unmixed with negligence or fault on his part. *Grady v. Meyer,* 205 Wis. 147, 236 N. W. 569. Notwithstanding the failure of the plaintiff to assert that defense in the foreclosure action, he seeks to assert it now because his attorney who represented him in the foreclosure action was not familiar with the case of *Bur v. Bong,* 159 Wis. 498, 150 N. W. 431. While his

attorney may not have been familiar with that particular case, it does not follow, and we would not be justified in presuming, that he was not familiar with the doctrine of laches which many times theretofore had been asserted in this state as a defense to an action and many times considered by this court. See numerous cases cited in *Bur v. Bong, supra.*

But passing for the moment the contention of the defendant that laches, if relied upon, should have been interposed as a defense in the foreclosure action, let us consider the contention of the plaintiff that *Bur v. Bong, supra,* rules the present controversy in favor of the plaintiff as found by the trial court, and that, if it had been called to the attention of the trial court, foreclosure of the mortgage would have been denied.

The facts upon which laches were found by a divided court in *Bur v. Bong, supra,* are so different from the facts here as to render that case easily distinguishable. In the first place, the mortgage covered real estate owned by Bong, the mortgagor, a part of which was subsequently conveyed to a Mrs. Holland. At the time the mortgage was given Bong owned an undivided one-ninth interest in lots 15 and 16. Subsequent to the giving of the mortgage to Bur, Bong conveyed by quitclaim deed, his one-ninth interest in lot 15 to one Schauer, who, at or about the same time, acquired title to the remaining eight ninths of lot 15. Schauer thereafter conveyed lot 15 by warranty deed to Mrs. Holland, who thereafter made extensive improvements thereon. In the second place, Bur was related to Bong, and in explanation of his long delay in bringing foreclosure proceedings, testified that he was related to Bong and that he did not desire to press him for payment believing that Bong would pay him some time. The debt was Bong's. Mrs. Holland had not agreed to assume and pay the mortgage or any part thereof. She had no actual knowledge of the mortgage, although it was recorded. Bong was primarily liable, and the duty rested

upon Bur to collect the debt from Bong. In the third place, Bong occupied the adjoining lot 16, and Bur was obviously familiar with the whole situation, including the making of extensive and valuable improvements by Mrs. Holland upon lot 15. In the fourth place, Bur delayed for eighteen years before attempting to collect the balance of the principal due him or any of the interest. The controlling facts in that case, in our view, were the failure of Bur to attempt to collect the debt or any of the interest from his relative Bong for about eighteen years, and during all of that time stood silently by while Mrs. Holland made valuable improvements to her lot.

In the present action, Mrs. Harder, the defendant, did nothing more than fail to attempt to collect the principal of her mortgage and the interest thereon for a period of about eleven years. She resided during all of that time in the east or in Canada, traveled extensively in Europe and in South America, and had no knowledge that the plaintiff was improving the farm by erecting thereon a barn, a woodshed, a pump house, a chicken coop, and two garages; that he had planted apple trees thereon and cleared three or four acres thereof; that he had built new fences, etc., all of which he estimated cost him about $2,000.

Since the mortgage was recorded, the plaintiff had constructive notice thereof. He paid no consideration for the farm except the agreement to support his father and mother during their natural lives. The farm was freed of the burden of that contract within about three years.

In our opinion, there is no evidence in this case which justifies the conclusions of the trial court that defendant was guilty of laches and that the enforcement of the foreclosure judgment would be unjust, unconscionable, or inequitable.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.