WERNER, Appellant, vs. RIEMER and another, Respondents.*
*September 12—October 11, 1949.*

* Motion for rehearing denied, with $25 costs, on November 29, 1949.

388

[redacted]

For the appellant there were briefs by *Dougherty, Arnold & Waters,* attorneys, and *Brooke Tibbs* of counsel, all of Milwaukee, and oral argument by *Mr. Suel O. Arnold* and *Mr. Tibbs.*

*Fred R. Wright,* attorney, and *William H. Churchill* of counsel, both of Milwaukee, for the respondents.

HUGHES, J.    Counsel for appellant claims that his appeal is from a summary judgment dismissing his original complaint upon its merits and from a summary judgment dismissing his amended complaint upon its merits and from an order denying appellant's motion for permission to prepare and file a proposed second amended complaint.

The summary judgment entered herein by the circuit court for Milwaukee county on the 14th day of February, 1949, dismisses the amended complaint upon its merits.    There is an order dated the same day denying appellant's motion for permission to file additional amendments to his amended complaint.    There is no order or judgment of the trial court with respect to the original complaint.    It is obvious that none was necessary.    When the appellant elected to file an amended complaint, the complaint originally filed was supplanted.

When the trial court filed its decision indicating how it would rule upon the motion for summary judgment and the

appellant's objections thereto, the appellant requested permission to again amend its complaint. It appearing to the satisfaction of the court that no new matter was offered in the proposed amendments which would establish a cause of action, this request was denied and the summary judgment dismissing the amended complaint was entered. The only effective order is the order for summary judgment dismissing the amended complaint. The only action of the trial court appealable herein is the summary judgment dismissing the amended complaint upon its merits.

Three separate lawsuits were pending between the appellant and respondents in 1945 at the time the sale of the stock was made. The sale was made in connection with settlement and dismissal of those three actions. The summary judgment of dismissal in the instant action was ordered because the trial court concluded that the fraud complained of in the instant case was the identical fraud complained of in the course of disposition of the previous suits. Because we are of the opinion that the trial court not only was correct in its conclusion but that its opinion fully sets out the facts and the law which made its decision necessary, we reprint its decision in full and adopt it as the opinion of this court:

This is an action to recover damages for fraud in the purchase by defendant, Bridge Company, from the plaintiff of sixty-four shares of the capital stock of said company, in that defendants on the 31st day of December, 1945, falsely represented that said shares of stock "were not reasonably worth more than five hundred dollars ($500) per share," whereas defendants had knowledge that at said time the value of said stock was in excess of $2,000 per share. Further it is alleged that "prior to the disposition of said.stock, the plaintiff attempted to obtain an audit of the books of said defendant corporation for the purpose of determining the value of said shares of stock, but the defendants refused to permit the plaintiff to conduct such audit and deliberately withheld from the plaintiff

information which was necessary in order for the plaintiff to be apprised of the true value of said stock."

Upon the motion of the defendants for summary judgment, the following facts are established, without dispute:

"1. That the plaintiff was an employee of the company from on or about August 23, 1923, until on or about August 15, 1944; that he was a stockholder of the company from April 4, 1938, until December 31, 1945; and, from on or about May 2, 1942, until on or about August 15, 1944, he was an officer, namely, a vice-president, of the company, in charge of sales.

"2. That, during the period of more than a year next preceding December 31, 1945, numerous disputes and controversies existed between the plaintiff and the defendants in this action pertaining to various matters concerning the company and its business and affairs, and to the plaintiff's and defendant Riemer's connection therewith. Said disputes were of a serious nature and involved subject matters which were substantial in amount and important in their consequences, and said parties dealt with each other at arms' length during said time in respect to all of said matters."

3. On October 28, 1944, an action was brought in the circuit court of Waukesha county by Wisconsin Bridge & Iron Company against the plaintiff herein to recover $11,088.97, claimed to be due on an open account.

4. November 2, 1944, the plaintiff herein commenced an action against said Bridge Company (No. 193–405) by service of a summons and accompanying affidavit to enable plaintiff to plead in which the object of the action was stated to be "for the recovery of moneys due and owing for commissions from the defendant, and as a minority stockholder for the purpose of enforcing his rights as against the defendant and for an accounting." A garnishment action ancillary thereto was also commenced (File No. 193–334).

5. December 23, 1944, plaintiff began a further action (No. 194–030) against the defendants herein and Joseph A. Schoe-

necker and Edmund F. Barkow as officers and directors of the company. This action was likewise commenced by summons and affidavit to plead. The object of the action, which the affidavit states is brought by plaintiff as a stockholder of and on behalf of said company was ". . . to recover from the defendants money and property of said corporation *misused, misappropriated,* and/or illegally expended by them or *converted* to their own use . . . ; to suspend and remove said Arthur L. Riemer, Joseph A. Schoenecker, and Edmund F. Barkow as such directors and officers for their *gross misconduct in their mismanagement, misuse, and illegal disposition of the funds and property of said corporation;* for the appointment of a *receiver* of and for said corporation. . . ."

6. That in the meantime and during the pendency of said actions, numerous motions were made, questions arising upon adverse examinations were certified to the circuit courts of Waukesha and Milwaukee county, and numerous conciliation conferences were held in an attempt to settle the matters in dispute.

7. "February 24, 1945, the parties entered into an arbitration agreement, covering the matters in dispute, as follows: (1) The number of shares of capital stock owned by Werner; (2) the value thereof; (3) the amount of commission due to said Werner for the years 1940, 1941, and 1942; and (4) the sums claimed to be due to the Bridge Company from said Werner. The agreement further recited the pendency of the various actions above set forth. The agreement, after the selection of the arbitrators, proceeds:

"The parties hereto agree to submit to said arbitrators such evidence as said arbitrators may desire concerning said disputes and that said arbitrators shall have the right and authority to hear and determine all matters in dispute between the parties hereto, and that said arbitrators, or a majority of them, after hearing said evidence, shall determine said controversies. . . .

"The report and determination of said differences, disputes, and claims shall be made in writing and in triplicate, signed by the arbitrators, or a majority of them, and one delivered or mailed to each of the parties and one filed with the clerk of the circuit court in the above-entitled action. Thereafter upon three days' notice by either party to the other, said written report and determination shall be submitted to the circuit court of Milwaukee county, in that branch thereof presided over by the Honorable DANIEL W. SULLIVAN, circuit judge, for consideration and decision. The decision of said court shall be final and binding on the respective parties. If said court shall refuse to approve and adopt said report and determination, the above-entitled action and all of said other hereinbefore designated actions shall remain and continue pending in all respects the same as if this agreement had not been entered into.

"If said court shall approve and adopt said report and determination, judgment shall be entered in the above-entitled action as to said commissions, if any, accordingly, and first party agrees to pay and satisfy said judgment forthwith and second party agrees to thereupon execute a satisfaction thereof.

"If said court shall adopt said report and determination, second party agrees to sell to first party and first party agrees to buy for cash all of said stock at a value and price so determined by said arbitrators, less the amount found due first party from second party, if any, said purchase and sale to be consummated coincident with the payment and satisfaction of said judgment.

"In the event of the adoption of said report and determination by said court, the entry, payment, and satisfaction of said judgment and the consummation of the purchase and sale of said stock, as aforesaid, the parties hereto agree to forthwith dismiss on the merits without costs the three other hereinbefore designated pending actions, and at the same time execute and deliver to each other full and complete releases of any and all claims and causes of action to the date of such releases."

The arbitration agreement also provides that ch. 298, Stats., shall not be applicable.

8. On April 5, 1945, plaintiff, Werner, gave notice that he thereby revoked the powers of said arbitrators.

9. April 21, 1945, the arbitrators made their award and caused same to be filed in case No. 193–405 above. The award recites several meetings at which "all evidence, oral and documentary, as we deemed necessary, pertinent, or material concerning said disputes" was submitted and "full opportunity to present all matters, oral and written, which they [the parties] desired and which we deemed necessary, pertinent, or material concerning said disputes; . . . that we retained Price, Waterhouse & Company, certified public accountants, who at our request reviewed the books and corporate records of said corporation and reported their findings to us; . . ." The award finds that:

"(1) A. J. Werner is the owner of sixty-four shares of common stock of Wisconsin Bridge & Iron Company, of the value of $500 per share.

"(2) A. J. Werner is indebted to Wisconsin Bridge & Iron Company in the amount of $7,469.80, with interest at six per cent (6%) per annum from August 11, 1944, compounded annually, by reason of advances to him to purchase stock and recorded in his personal account with said corporation.

"(3) Wisconsin Bridge & Iron Company is indebted to A. J. Werner in the amount of $31,525.98 for commission earned by him in the year 1940, with interest at six per cent (6%) per annum from December 31, 1940, compounded annually; and A. J. Werner had heretofore been paid in full by Wisconsin Bridge & Iron Company for all services performed by him for said corporation in the years 1941 and 1942.

"(4) We recommend that inasmuch as A. J. Werner resigned August 11, 1944, he should be paid $6,666.67 by·Wisconsin Bridge & Iron Company as a bonus for 1944, measured by the proportionate share of the annual bonus paid to him in the preceding years."

10. April 25, 1945, defendant Bridge Company gave notice of the filing of said award and that it would move for judgment therein April 27, 1945.

11. Thereafter plaintiff, A. J. Werner, obtained an order to show cause, returnable May 25, 1945, (entitled in case No. 193–405) to vacate the award, deny defendant's motion for

judgment thereon, and to permit proof by evidence of the following facts set forth in plaintiff's accompanying affidavit:

(a) "Affiant says that said purported arbitration award is invalid as such; that it was based upon fictitious, false, arbitrary, improper, inaccurate, and incomplete figures and secondary data; that it was the result of the *fraudulent suppression and concealment* and the *false representation* of the true and pertinent facts and figures by the president-treasurer and the first vice-president of the defendant company; that by reason thereof, said purported award was the result of a fundamental misconception by said arbitrators of the true, pertinent facts and figures, and their adoption and use of such fictitious, false, arbitrary, improper, inaccurate, and incomplete figures and secondary data."

(b) That after approximately three weeks spent by Price, Waterhouse & Company, the accountants turned over certain "tentative and unaudited" statements upon which the award was based. That said statements were merely copies from books and records turned over by defendant company and its officers and that "such books and records so turned over were *not* the *true* books and records of said company and that consequently said statements were designated by said accountants as "tentative and unaudited," but that the arbitrators nevertheless made use of said statements in determining said award.

(c) "Affiant further says that said officers of the defendant company concealed from said accountants of Price, Waterhouse & Company and suppressed the true books and records of the defendant company relative to the contracts involving said commissions, the value of said stock, and the amount of said indebtedness; that they unduly influenced said accountants and persuaded them to prepare and turn over to the arbitrators said 'tentative and unaudited' statements in lieu of a proper audit, and unduly influenced the arbitrators to so adopt and use such statements in arriving at the so-called award, all contrary to the agreement of arbitration and the understanding of the parties at the time Price, Waterhouse & Company was engaged by the arbitrators."

(d) That said purported award was "intrinsically based upon fictitious, arbitrary, incomplete, and inaccurate secondary

figures and data," in arriving "at the amount of $7,469.80 as the balance due to said defendant company from affiant for sixty-four shares of its common stock purchased at $200 per share . . ." and "that the actual amount unpaid defendant company on account of the purchase price of said stock is $788 instead of $7,469.80; that the failure of the arbitrators to so find was due to their ignorance and misconception of the pertinent facts as the result of the *fraud and misconduct* of said officers of the defendant company in *suppressing* and *concealing* from said accountants and from said arbitrators the facts as they appear in the *true* books and records of said company."

(e) That the findings of the arbitrators were the result "of the said *suppression and concealment* of the true books and records of the defendant company relevant thereto by said officers; that the true amount of commissions so earned amount to $46,868.62 as of December 31, 1940, instead of the amount so found by the arbitrators."

(f) "Affiant further says that said purported award as made was otherwise inherently based on fictitious, inaccurate, and incomplete secondary unverified figures and data; that in arriving at the amount of $500 as the value of said sixty-four shares of stock, such valuation was based on the said 'tentative and unaudited' statements so prepared by Price, Waterhouse & Company, and as of December 31, 1943; that in truth and in fact the operations of the defendant company for the year 1944 were, within the knowledge of affiant, such as to render said stock of the value of *at least $560.21, exclusive of additional values on account of concealed inventories and improvements;* that as affiant is informed and believes, the arbitrators in determining the value of said stock at $500 purported to take into account and give affiant the benefit of the provisions of the written option attached to said certificates of stock, namely, thirty-five dollars per share, plus interest, and which, when added to said $560.21 *renders said stock of the value of $595.21,* as of December 31, 1944. Copy of said option is hereto attached and made a part hereof, marked Exhibit C. That said finding was also made by the arbitrators without knowledge and as the result of a misconception of the relevant facts and figures determinative of such value and on account of the *fraudulent suppression and concealment of the true books*

*and records* of the defendant company relevant thereto by the said officers thereof."

12. Affidavits by Arthur L. Riemer, president of defendant company, Joseph A. Schoenecker, vice-president, and Alvin Jaragowski, in charge of the accounting department, were submitted, denying the allegations contained in the Werner affidavit above set forth.

13. That pursuant to a motion by plaintiff, A. J. Werner, an order was entered, September 25, 1945, granting "immediate inspection of all books and records" of the defendant company and setting the case for trial on October 15, 1945.

14. An appeal was taken to the supreme court on October 1, 1945, from the order recited in paragraph 13 above.

15. On December 31, 1945, the following proceedings were had:

I. An order entered in case No. 193–405 but applicable to all of the pending actions, the opening recitals of which follow:

"The above-entitled matter having come on to be heard before the above-named court in that branch thereof presided over by the Honorable DANIEL W. SULLIVAN, on the 31st day of December, 1945, the plaintiff appearing in person and by his attorneys, Glenn R. Dougherty and George A. Gessner, and the defendant appearing by its president, Arthur L. Riemer, and its attorney, Fred R. Wright, and the court having heard statement of counsel *and having heard the testimony taken in open court,* and

"Whereas, disputes have long existed and now exist between A. J. Werner, the above-named plaintiff and the Wisconsin Bridge & Iron Company, the above-named defendant, as to the number of shares of capital stock of said company owned by A. J. Werner and as to the value thereof, and as to commissions claimed by said A. J. Werner to be due him from said company for contracts obtained by him for said company, particularly during the years 1940 and 1941, and as to moneys claimed by said company to be due it from said A. J. Werner."

The order contains the additional recitals:

The pendency of the action recited in paragraph 3 above.

The pendency of the actions recited in paragraph 4.

The pendency of the action recited in paragraph 5.

The entering into of the arbitration agreement on February 24, 1945.

The filing of the award of said arbitrators on April 21, 1945.

The motion of the defendant, Bridge Company, for approval of said award.

The objections of the plaintiff, A. J. Werner, to said award, "with a motion for an order permitting the presentation of oral testimony and evidence relative to said objections."

An order entered June 20, 1945, "granting said motion and setting September 10, 1945, as the date for hearing of evidence."

An order continuing said hearing to October 15, 1945, and in the meantime that "said A. J. Werner have immediate inspection of all the books and records of said company pursuant to sec. 269.57 . . . and of the nature and extent provided in said order."

The pendency of the appeal by defendant from said order for inspection.

The order concludes as follows:

"Whereas, in order to settle all of the above-mentioned disputes between the parties and to terminate the aforesaid protracted and expensive litigation arising out of the aforesaid disputes, the parties have now agreed to accept the provisions of the aforesaid arbitration and award with respect to the number of shares of stock and the value therein determined, namely, sixty-four (64) shares at five hundred dollars ($500) per share, or a total of thirty-two thousand ($32,000) dollars, and the plaintiff having agreed to accept, and the defendant having agreed to pay a total sum of eighty-nine thousand ($89,000) dollars, for commissions due the plaintiff, and

"Whereas, proof has been offered showing that the commis-

sions due the plaintiff, A. J. Werner, for the year 1940 are in excess of fifty thousand ($50,000) dollars, and that commissions due him for the year 1941, are in excess of thirty-nine thousand ($39,000) dollars, and

"Whereas, this court being thoroughly familiar with the claims of the plaintiff and the defendant with respect to the afore-mentioned dispute having had numerous conciliation and other hearings and having heard the contentions of both parties, and otherwise being fully advised in the premises,

"Now, hereby orders: That the aforesaid disposition of the claims of the plaintiff for stock and commissions be approved, and

"Hereby further orders: That upon the payment of the sum of thirty-two thousand ($32,000) dollars by the defendant, Wisconsin Bridge & Iron Company to the plaintiff, A. J. Werner, for the purchase of the shares of stock owned by said A. J. Werner in the said Wisconsin Bridge & Iron Company, and the further sum of eighty-nine thousand ($89,000) dollars of which sum the court determines that fifty thousand ($50,000) dollars thereof is due the plaintiff, A. J. Werner, for commissions for the year 1940, and thirty-nine thousand ($39,000) dollars thereof is due the plaintiff, A. J. Werner, for commissions for the year 1941, while he was in the employ of the defendant, Wisconsin Bridge & Iron Company, the above-entitled action, the action pending in the circuit court of Waukesha county, in which the Wisconsin Bridge & Iron Company is plaintiff, and A. J. Werner is defendant, and action No. 193–334, pending in the circuit court of Milwaukee county, in which A. J. Werner is plaintiff, and Wisconsin Bridge & Iron Company is defendant, and the First Wisconsin National Bank of Milwaukee and Marshall & Ilsley Bank of Milwaukee are garnishee defendants, and action No. 194–030, in which A. J. Werner is plaintiff, and Wisconsin Bridge & Iron Company, Arthur L. Riemer, Joseph A. Schoenecker, Edmund F. Barkow, as directors of said company, are defendants, all be dismissed on the merits, without costs."

II. A general release of the defendant company and each of its officers and agents, executed by plaintiff, A. J. Werner, and which concludes as follows:

"I, the undersigned, Arnold J. Werner, do hereby certify that I have read and fully understand the above and foregoing instrument and all the provisions thereof and that I have executed the same as my own free act and deed without any threats or coercion and not as a result of any statements or representations made by or on behalf of said Wisconsin Bridge & Iron Company, nor any statements or representations made by any of its officers, directors, or agents individually or as such officers, directors, or agents made for the purpose or with the intent to induce the execution thereof and that no statements or representations were made by anyone as an inducement to the execution thereof."

III. A general release executed by the Wisconsin Bridge & Iron Company in favor of plaintiff, A. J. Werner.

IV. Orders dismissing each of the above-mentioned actions "upon its merits without costs," including a dismissal of the supreme court appeal without costs to either party.

The plaintiff, A. J. Werner, in the present action, resists the motion for summary judgment upon the following grounds:

1. That the arbitrators fixed the valuation of $500 per share as the value of the plaintiff's stock "solely upon the basis of information furnished by Wisconsin Bridge & Iron Company and Arthur L. Riemer; that prior to the said award, the arbitrators had knowledge of a report submitted by the Bridge Company to Dun & Bradstreet that the value of said stock was $400 per share.

2. That the arbitrators proceeded with their award after plaintiff had given notice of the revocation of their powers as such.

3. That the matters in dispute in the actions pending in the circuit court of Milwaukee county were "settled and compromised" in reliance upon the representations made by the Bridge Company and Riemer that plaintiff's stock had a value of only $500 per share.

4. That plaintiff was prevented from having an inspection and audit of the books of the Bridge Company, by the latter's

appeal to the supreme court from the circuit court order allowing such inspection and audit.

5. That the plaintiff received the following information . . . as a result of an action commenced in May, 1947, by Fred E. McGaw, a former stockholder of the Bridge Company:

(a) An affidavit dated March 15, 1948, by Riemer and Schoenecker in said McGaw action "that the sum of $908.67 was not in excess of the true value of the outstanding capital stock of . . . the company."

(b) An affidavit by Riemer, president, and Jaragowski, secretary of said company, purporting to show that the company had a net worth in excess of $1,000,000, after deducting the value of the outstanding capital stock at $908.67 per share.

(c) "Subsequent to the institution of said action by the said Fred E. McGaw, the plaintiff obtained information from a reliable source, indicating that in the determination of the said values of the outstanding capital stock of Wisconsin Bridge & Iron Company, upwards of $100,000 in value of negotiable bonds of the said company were converted to the use of certain officers of said corporation, and that instructions were given to the bookkeeper of said corporation to make an appropriate entry in accounts payable in the amount of said negotiable bonds."

· (d) That plaintiff, Werner, "subsequent to the said McGaw action, also obtained information which he believes to be reliable, indicating that in the determination of said values of the said capital stock of said corporation, certain ledger sheets were *altered and rewritten* at or prior to the investigation . . . by Price, Waterhouse & Company to determine the value of the capital stock of said corporation, and that the rewritten and altered ledger sheets were relied upon by said Price, Waterhouse & Company in making their report of the value of the stock of said corporation." : That "Price, Waterhouse did

not make a complete, audit . . . and therefore refused to certify or sign its report, for the reason that the information furnished . . . was not complete, but was fragmentary, and was not in such form as to permit a proper certification by certified public accountants. . . ."

(e) That on May 18, 1948, the McGaw action was "compromised and settled." "Said settlement included the sale of sixty-five shares of stock of Wisconsin Bridge & Iron Company owned by said Fred E. McGaw to said corporation, for a consideration slightly in excess of $2,000 per share."

(f) That the Bridge Company and Riemer "deliberately and for the purpose of misleading and defrauding the plaintiff gave said fake information to said arbitrators concerning the true value of the outstanding shares of capital stock . . . as indicated by the consideration paid to Fred E. McGaw for the shares of capital stock owned by him."

To summarize the case made by the plaintiff in the present action, it is to the effect that, whereas a final determination was made in the former actions, which were based upon the alleged fraud of the Bridge Company and its officers, plaintiff contends that he is entitled to collaterally attack said adjudications, upon the ground that he has since discovered *additional* evidence bearing upon the *identical* fraud claimed in the original actions, the effect of which would be to increase the damages sought in the prior actions. I am of the opinion, (1) that plaintiff herein is bound and precluded by the dismissals upon the merits of the previous actions, from relitigating the issues determined in said actions; (2) that the record conclusively shows that plaintiff did not rely and act upon the alleged fraud of defendant and its officers.

(1) It will be noted that the charges of fraud in the original actions consisted of *conversion, concealment* of assets, and *falsifying* of books and records of the company, which are the basic allegations of fraud in the present action. The ad-

ditional claim that defendant, Riemer, represented to the arbitrators that the stock was not worth more than $500 is answered by the charges of fraud above stated, made in the original actions, particularly by the allegation that said stock, the value of which was fixed by the arbitrators at $500 per share, was in fact worth "at least $560.21 *exclusive of concealed inventories and improvements.*" The claim that plaintiff was prevented from an examination of the books and records of the defendant company is answered by the order of this court allowing such inspection and examination. True, defendants appealed from said order but plaintiff elected to settle the case before final ruling was made by the supreme court. The facts alleged in connection with the settlement of the McGaw case also amount only to additional evidence of the fraud which plaintiff charged and which he claimed was within his personal knowledge *prior* to the dismissal on the merits of the original actions.

The order, adjudicating the rights of the parties, entered December 31, 1945, must be considered in connection with the *releases* and orders for dismissal of the various actions *on the merits,* all of which were executed at the same time. The order adjudicating the rights of the parties was heard upon proofs submitted, except as to the value of plaintiff's stock as to which both parties, notwithstanding the charged fraud, agreed to accept and adopt the award of the arbitrators which the court, in said order, approved.

"To distinguish a 'judgment' from an 'order' the test is not the designation but whether the decision is a final determination of the rights of the parties; if it is, it is a judgment, otherwise it is an order." 4 Bryant Pl. & Pr. (Boesel & Henderson 2d ed.), p. 5, sec. 534; sec. 270.53, Stats.; *In re Henry S. Cooper, Inc.* (1942), 240 Wis. 377, 386, 2 N. W. (2d) 866; *Zbikowski v. Straz* (1940), 236 Wis. 161, 165, 166, 294 N. W. 541; *O'Brien v. Rice* (1925), 186 Wis. 523, 203 N. W. 332.

The fact that part of the adjudication was based upon a stipulation of the parties does not affect its finality. *Zbikowski v. Straz, supra; Duras v. Keller* (1922), 176 Wis. 88, 186 N. W. 149; *Wessling v. Hieb* (1923), 180 Wis. 160, 192 N. W. 458; *Grady v. Meyer* (1931), 205 Wis. 147, 236 N. W. 569.

The final adjudication is conclusive, in a subsequent action between the same parties, as to all matters which were litigated or which might have been litigated in the former proceedings. 4 Bryant Pl. & Pr. (Boesel & Henderson 2d ed.), p. 28, sec. 550; *Kuchenreuther v. Chicago, M., St. P. & P. R. Co.* (1937), 225 Wis. 613, 275 N. W. 457; *Grunert v. Spalding* (1899), 104 Wis. 193, 213, 214, 80 N. W. 589; 50 C. J. S., Judgments, sec. 712 (p. 168 *et seq.*, especially at (2), p. 176, note 73; and pars. c and d, p. 180).

It is settled law that a judgment of a court which had jurisdiction of the subject matter of the action cannot be impeached and is immune from and not subject to collateral attack, even though patently erroneous. 4 Bryant Pl. & Pr. (Boesel & Henderson 2d ed.), p. 27, sec. 549; *Mason v. West Park Realty Co.* (1927), 193 Wis. 14, 213 N. W. 286; *Ottstadt v. Jardine* (1938), 229 Wis. 85, 281 N. W. 644; *Newcomb v. Ingram* (1932), 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171; *Vaughn v. Walsh* (1904), 122 Wis. 486, 100 N. W. 840. In *Cody v. Cody* (1898), 98 Wis. 445, 452, 74 N. W. 217, it was held:

"As to the numerous allegations charging fraud and imposition on the part of William G. Cody, both upon his father, upon Mr. Sanborn, and upon the court, it is very plain that none of them can affect the question of jurisdiction. A judgment may be procured by the grossest fraud, and yet be within the undoubted jurisdiction of the court which renders it. Upon collateral attack, the question is not whether the judgment was obtained by fraud, but whether it was rendered without jurisdiction."

See also *Zastrow v. Milwaukee E. R. & L. Co.* (1924), 183 Wis. 463, 465, 198 N. W. 275; Restatement, Judgments, pp. 174, 181, secs. 45, 47.

A closely related principle is that which precludes the splitting of a cause of action. *Stern v. Riches* (1901), 111 Wis. 591, 594, 87 N. W. 555; Restatement, Judgments, p. 242, sec. 62, particularly comment at page 246.

Nor is the conclusive effect of a final adjudication or its immunity from collateral attack affected by the fact that formal complaints were not filed in the Milwaukee county actions. The rule applicable is stated in 4 Bryant Pl. & Pr. (Boesel & Henderson 2d ed.), pp. 28, 30, sec. 550, as follows:

"For any particular matter to have been litigated it must have been within the issues as presented either by the pleadings or the evidence. For the purpose of determining what matters were litigated, recourse may be had to the pleadings in the former proceeding, to the evidence therein, and to the verdict or findings. The entire record in the former proceeding and even extrinsic evidence may be resorted to, if necessary. . . ."

In *Nehring v. Niemerowicz* (1937), 226 Wis. 285, 290, 291, 276 N. W. 325, it is explained:

"In the actions barred by judgments in former actions the matter sought to be presented in the subsequent suit must be within the issues raised by the complaint in the former. . . . A complaint is essential to confer jurisdiction to enter a judgment against a defendant. [Citing cases.] It is said in effect in the syllabus to *Will of Rice,* 150 Wis. 401, par. 9, 136 N. W. 956, 137 N. W. 778, and the opinion supports the statement, that where a court has jurisdiction of the subject matter a judgment is void if the court goes beyond the scope of the pleadings, unless it is supported by agreement of the parties. . . ."

In the original actions the order adjudicating the rights of the parties, entered December 31, 1945, and the *releases* and

orders of dismissal entered pursuant thereto, were supported by affidavits and written statements, coupled with proof in open court and a stipulation, approved by the court. In *Zohrlaut v. Mengelberg* (1914), 158 Wis. 392, 402, 148 N. W. 314, 149 N. W. 280, it was held:

"The *res adjudicata* effect of a judgment is not confined to matters appearing on the face thereof. It extends to all questions within the issues, which were actually passed upon in reaching the final conclusion, whether mentioned in the judgment or found only in the findings or otherwise in the case and properly preserved, and may extend further. *Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1; *Strong v. Hooe,* 41 Wis. 659; *Rupiper v. Calloway,* 105 Wis. 4, 80 N. W. 916; *Eastman v. Porter,* 14 Wis. 39." See also *Grunert v. Spalding* (1899), 104 Wis. 193, 214, 80 N. W. 589; *Gerbig v. Bell* (1910), 143 Wis. 157, 126 N. W. 871.

Neither has a case been stated for *equitable* relief against the adjudication of December 31, 1945. On the contrary, it affirmatively appears that none exists. To warrant such relief on the ground of fraud, a showing must be made of what has inaccurately been described as "extrinsic" fraud, which results in "directly inducing the judgment." *Grady v. Meyer, supra.* Extrinsic fraud is explained in the *Grady Case* as follows (p. 152):

"The complaint is barren of any allegation of fraud on the part of the appellant in any way to procure the entry of the judgment. In *Uecker v. Thiedt, supra,* Mr. Justice DODGE said: 'Fraud which can be made the basis of an attack upon a solemn judgment of a court of record must have directly induced the rendition of the judgment, not merely have induced or brought about a condition upon the real existence of which the court acted as the basis of its decree.'"

In Restatement, Judgments, p. 570, sec. 118, the general rule is stated to be that equitable relief from a valid judgment

will be granted to a party where "he had no reasonable opportunity to have determined impartially a meritorious claim or defense which he had." Explaining, though criticizing the use of the terms "extrinsic" and "intrinsic" fraud, the distinction is amplified in comment *b*, p. 571, as follows:

"Equitable relief will be given only in a limited number of situations where the judgment was rendered after proceedings in which the present complainant was deprived of an opportunity of presenting adequately his claim or defense (see secs. 119–125). The distinction between the types of situations in which equitable relief will be given and those in which it will not be given, has sometimes been expressed by saying that equity will not relieve for fraud which leads to an erroneous judgment after a trial which is otherwise fair, but only where a party has been prevented from having a reasonably fair trial. The first situation has been described as resulting from intrinsic fraud or error for which no relief will be given; the second situation has been described as resulting from extrinsic fraud, error, or misfortune, for which relief will be granted. . . .

"The rules by which equitable relief is obtained are different from those by which new trials are granted by trial courts. New trials are granted very largely in the discretion of the trial court in cases where it appears that for any reason there has been a miscarriage of justice. On the other hand equitable relief against a judgment will not be granted except in extreme cases, as where the losing party has been prevented by the wrongful conduct of the successful party from knowing of the case or being present at the trial. In cases where the unsuccessful party has had an opportunity to present the facts to the court, equity will not interfere except in a small group of cases (see par. 121) where fraud has been so successful that the person against whom a judgment was given was not aware that he had an action or a defense."

See *Lau v. Harder* (1936), 223 Wis. 208, 215, 270 N. W. 341; *Heine v. Witt* (1947), 251 Wis. 157, 164, 165, 28 N. W. (2d) 248; *Uecker v. Thiedt* (1907), 133 Wis. 148, 113 N. W. 447; *Scheer v. Ulrich* (1907), 133 Wis. 311, 113 N. W. 661.

It is obvious that in the proceedings resulting in the adjudication of December 31, 1945, and in the execution of the releases and the entry of the orders of dismissal "on the merits" of the various actions, all of which must be considered together, that plaintiff was not "prevented from having a reasonably fair trial." It is no answer to say that he was prevented from having a reasonably fair trial by the claimed refusal by defendant company and its officers to permit an inspection of its books and records. As heretofore shown, the trial court ordered an immediate inspection of the books and records of the company and set the case for immediate trial following such inspection. The defendant appealed from the order which, if correct, would have been affirmed by the supreme court and the only prejudice to plaintiff thereby would have been a slight delay in the trial. Plaintiff elected, however, to proceed without the inspection. Plaintiff makes no claim that his election was induced by trick, fraud, or artifice on the part of the company or its officers.

(2) A final answer to the plaintiff's claim of fraud is that it conclusively appears that the representations, if made, were not in fact relied upon by the plaintiff. The most that can be claimed is that additional evidence which plaintiff has since discovered would tend to enhance his damages. *Knerzer v. Worthing* (1924), 183 Wis. 39, 42, 197 N. W. 199; *Sullivan v. Baker* (1935), 217 Wis. 306, 314, 258 N. W. 617.

*By the Court.*—Judgment affirmed.

The following opinion was filed November 29, 1949:

PER CURIAM. (*on motion for rehearing*). The plaintiff filed a motion for rehearing and supported it by a brief containing, among other things, the following:

"A settlement based upon fraud should not be protected. To the bar at large, fraud is the most vicious of all civil wrongs. The courts must not condone it, directly or indirectly. Yet this court has refused to permit even an inquiry into the situation. This court now holds that fraud and deception, planned

and used to obtain a settlement, will be protected,—provided such falsity and fraud are done skilfully enough to be effective. In effect, this court now says: 'Your fraudulent work was clever and successful; you have done well and you may keep your booty, and we will help you by denying the defrauded party an opportunity to prove the fraud.' Certainly this court cannot be so callous to deception. Gross fraud has been committed; yet this court allows it to stand."

Rule 50 of the Rules of Practice in the supreme court provides:

"Rule 50. No costs shall be taxed for printing any brief containing matter disrespectful to this court or the trial court, or to opposing counsel; and the court will not consider such a brief, and of its own motion will strike it from the files."

The matter contained in plaintiff's brief on motion for rehearing is not only disrespectful to this court but is insolent and contemptuous, and charges the court with aiding and assisting in the perpetration of a fraud.

Not only that, the brief is apparently filed for the purpose of insulting the court. It consists merely of a series of statements and contains no arguments worthy of the name.

It is ordered that the appellant's brief on the motion for rehearing be and the same is hereby stricken from the files as disrespectful and contemptuous of the court. The court will consider what if any further action will be taken. Motion denied with $25 costs.