MINNESOTA ELECTRIC DISTRIBUTING COMPANY v.
UNITED STATES FIDELITY & GUARANTY COMPANY.[1]

December 9, 1927.

No. 26,299.

**Defendant was bound to defend action based on the accident, notice of
which was seasonably given to it.**

. Under its policy defendant agreed to indemnify plaintiff against in-
juries or death suffered accidentally by persons other than employes
in and about plaintiff's works, and also to defend suits brought because
thereof, whether groundless or not, provided written notice was im-
mediately given defendant of the accident and of any claim on account
thereof. A groundless suit was brought. Written notice was given,
but not until a claim was made against defendant. Defendant, after
answering in behalf of the assured but before trial, withdrew from the
defense. The assured employed other counsel and successfully de-
fended. This action is for attorney's fees and expenses. It is *held*:

[1] The policy obligated defendant to defend, since the complaint
stated a cause of action against the assured arising from the risk cov-
ered by the policy.

[2] The finding that notice of the accident and claim thereunder
was given in compliance with the policy is sustained by the evidence.

Liability Insurance, 36 C. J. p. 1103 n. 56, 58; p. 1104 n. 67; p. 1110
n. 95; p. 1126 n. 38.

See note in 38 L.R.A.(N.S.) 62; 47 L.R.A.(N.S.) 1214; L. R. A. 1918D,
445; 14 R. C. L. 1327; 5 R. C. L. Supp. 813.

Action in the district court for Hennepin county to recover attor-
ney's fees and expenses in defending an action upon a liability in-
surance policy. The case was tried before Montgomery, J. who
found for plaintiff. Defendant appealed from the judgment. Af-
firmed.

*Cobb, Wheelwright, Hoke & Benson* and *Tracy J. Peycke,* for ap-
pellant.

*Lancaster, Simpson, Junell & Dorsey* and *Leavitt R. Barker,* for
respondent.

[1]Reported in 216 N. W. 784.

HOLT, J.

Appeal by defendant from the judgment entered upon findings.

Defendant issued a liability insurance policy agreeing to indemnify plaintiff, the assured, against loss from the liability imposed by law for damages on account of bodily injuries or death suffered as a result of an accident by any person not employed by the assured while at or about the work of the assured described in a schedule attached; and also undertaking to defend the assured in any suit brought against it "to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death suffered, or alleged to have been suffered, by any person or persons not employed by the assured, while at or about the work of the assured described in the said schedule, during the prosecution of the said work at the place or places designated in statement numbered 6 of the said schedule, and as the result of an accident occurring while this policy is in force." Schedule number 6, under the headlines, "Description of work covered by this policy" and "Locations of all places where such work is to be done," contains these notations: "Electric Light and Power Companies—operation, maintenance, extension of lines, and making of service connections," and, "Polk, Norman and Marshall Counties, Minnesota, and elsewhere in the State of Minnesota."

While this policy was in force one Gunda Goar was injured by an electric current from the electric system installed 17 months previously by the assured in the village of Stephen, Marshall county. The system was constructed and installed under a contract between the village and the assured, which authorized the assured to deliver through its master meter electricity to the installed system at the village limits. The assured was charged with no duty of inspection or maintenance of the system located inside the village limits. For a fuller statement of the facts see Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171. The opinion therein, by directing judgment in favor of the assured, one of the defendants, eliminated the claim of indemnity against it. And this action is to recover the attorney's fees and expenses which this plaintiff, the

assured, was put to in the Goar suit, because defendant, after answering for the assured therein, withdrew from the defense.

The first point raised is that these expenses so paid were not covered by the policy, it now being conclusively established that the accident to Goar did not occur at or about the assured's work nor from a cause within its control.

However, the policy contains two direct obligations, the one being to indemnify the assured for the amount it by law is compelled to pay on account of accidental injuries, and the other to undertake at its expense the defense of any suit, whether groundless or not, brought against the assured based upon such injuries. [Defendant's counsel frankly admits that if the complaint in any such suit brought states a cause of action against the assured for the recovery of damages, the terms of the policy obligate defendant to defend.][1] In other words, the expenses this assured was put to in defending the Goar suit are covered by the policy, unless the assured successfully could have demurred to the Goar complaint. We think a demurrer thereto could not have been sustained.

Among other matters, that complaint charges the assured with negligence in the construction of the electric system for the village in several particulars, namely: In so constructing it that high voltage wires were in too close proximity to house service wires, thus permitting the escape of high tension current to the service line entering the Goar house and causing the injury to Gunda; that the high tension wires were insufficiently insulated; that the cross arms on the poles carrying different tensioned currents were too close together; that the assured failed to use suitable and improved safety devices to guard against dangers to the users of electrical energy from the system; that the transformers installed were defective; and that the assured failed to construct the system according to its contract with the village and the village negligently permitted this, although both well knew the danger that was thereby occasioned to consumers of electricity from the system installed. There are proper allegations that the above and other negligent acts and omis-

[1]Statement within [   ] withdrawn. See page 120, infra. [Reporter.]

sions of the assured proximately caused the injury to Gunda Goar. Even though the complaint disclosed the existence of the contract under which the village had accepted the system installed some 17 months prior to the accident, there was alleged such connection of the assured with defects in construction resulting in the injury that, were they established, a jury could find the negligence of the assured a contributing cause with that of the village to the accident to Goar.

The policy contains these provisions:

"Upon the occurrence of an accident the Assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the Company at its Home Office or to the agent who has countersigned this policy. If a claim is made on account of such accident the Assured shall give like notice thereof with full particulars."

The accident to Gunda Goar happened August 10, 1922. From a newspaper clipping an officer of the assured learned thereof August 25. About the middle of the next month rumors reached the assured of the possibility of a claim against it on account thereof. One of its officers promptly interviewed Goar's attorney, who "stated that to date they had found no excuse for involving us [the assured] in the suit." No claim appears to have been asserted against the assured until October 23, 1922, when the summons in the Goar suit was served upon it. Notice thereof at once was given defendant. The court found the notice timely. This finding is attacked.

The notice given unquestionably complied with the second sentence above quoted from the policy. And under the circumstances of the case we deem the first sentence quoted of doubtful applicability. The accident did not occur upon or about the premises, property, or works of the assured, nor in or about property or works then within its control or charge. It did not know that an accident had happened until two weeks after it took place. At the time it did learn thereof it had no reasonable ground to apprehend that it in any manner would be charged with responsibility therefor. The assured rightfully concluded that no recovery could be

had so far as it was concerned, and hence no useful purpose could be served by a notice to defendant. As soon as a rumor of the possibility of a claim came to the ears of the assured, it was investigated and ascertained to be without foundation. When it was finally made, it turned out utterly groundless. Even against such a claim, if sued, defendant had covenanted to assume the defense of the assured. Contracts of this sort must be given a reasonable construction so as to afford the protection paid for.

It would be unreasonable to assume the parties to this policy contemplated that a notice was to be given immediately of an accident of which the assured, its agents, or representatives had no knowledge and which had not happened upon premises within its control or possession. And even if the accident had happened upon the assured's premises, it is conceivable that it might have had no knowledge thereof. Suppose a trespassing child or other person were injured by climbing a pole of the assured's and coming in contact with a wire carrying a high voltage current and no knowledge thereof came to the assured for several months until suit brought, could it be held in such case that the policy afforded no protection as to carrying on the defense because, forsooth, immediate notice of the accident was not and could not be given, the assured being ignorant thereof? We think not. Northwestern Tel. Exch. Co. v. Maryland Cas. Co. 86 Minn. 467, 90 N. W. 1110, holds the obligation to give notice arises where inferences are permissible that the assured possessed knowledge of the accident.

If complete ignorance of the accident and the consequent inability to give notice thereof does not prevent a recovery of indemnity therefor against the insurer, it should follow that knowledge of an accident the causing of which may not, on any reasonable basis, be attributed to the act or omission of the assured, does not call for immediate notice in order to secure the benefit of the insurer's covenant to defend a groundless suit brought against the assured on account thereof. In Hughes v. Central Acc. Ins. Co. 222 Pa. 462, 465, 71 A. 923, it is said:

"It has been repeatedly ruled in actions under policies requiring immediate notice to be given of the accident, that the word 'im-

mediate' is to be construed as meaning a reasonable time after the accident, under the facts and circumstances of the particular case. Cases arise where the delay has been so great that the court is fully justified in ruling it as a matter of law; but this occurs only where the admitted facts and circumstances disclose nothing by way of extenuation or excuse."

See also Fletcher v. Ger. Am. Ins. Co. 79 Minn. 337, 82 N. W. 647; C. S. Brackett & Co. v. General Acc. F. & L. Assur. Corp. 140 Minn. 271, 167 N. W. 798; Greenough v. Phoenix Ins. Co. 206 Mass. 247, 92 N. E. 447, 138 A. S. R. 383; Woodmen Acc. Assn. v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 A: S. R. 777; Midland G. & P. Co. v. Ocean Acc. & Guar. Corp. 102 Neb. 349, 167 N. W. 211, L. R. A. 1918D, 442; Melcher v. Ocean Acc. & Guar. Corp. 226 N. Y. 51, 123 N. E. 81. Haas Tobacco Co. v. Am. Fidelity Co. 226 N. Y. 343, 123 N. E. 755, 13 A. L. R. 132, is not out of harmony with the Melcher case, as appellant claims, nor does it support the contention that, as a matter of law, notice in the instant case was not timely.

It is conceivable that failure to give immediate notice of an accident might relieve this insurer from the indemnity provision, but not from the obligation to defend a suit brought upon a groundless claim, provided due notice was given of such claim immediately upon being made. This thought, applicable to the case at bar, is clearly expressed in the short opinion filed upon rehearing in Hope Spoke Co. v. Maryland Cas. Co. 102 Ark. 12, 143 S. W. 85, 88, 38 L.R.A.(N.S.) 62, Ann. Cas. 1914A, 268, reading:

"The provision for notice refers to two subjects, notice of the accident and notice of suit. The contract makes the right to recover costs and expenses of defending a suit depend as a condition precedent, on the giving of notice of suit. It is undisputed in this case that notice of suit was promptly given, therefore the right to recover costs and expenses of suit is established. The stipulation of counsel as to the amount which appellant may recover, if entitled to recover at all, precludes all inquiry now as to the amount of the judgment."

Southern States Fire Ins. Co. v. Hand-Jordan Co. 112 Miss. 565, 73 So. 578, and Schambelan v. Preferred Acc. Ins. Co. 62 Pa. Super. Ct. 445, sustain the same proposition. We consider the finding of notice in compliance with the conditions of the policy sustained under any view that may be taken of the evidence and the applicable rules of law.

The finding of waiver of due notice is assailed. In view of conclusion already stated, this finding becomes immaterial to a decision and need not be discussed.

The judgment is affirmed.

ON PETITION FOR REHEARING.

On December 23, 1927, the following opinion was filed:

PER CURIAM.

In the petition for rehearing the attorney who made the oral argument claims that he did not intend to make the admission the opinion attributes to him. His integrity and candor are of the sort that leave no doubt in the mind of the court that he was misunderstood, and the statement referred to is hereby withdrawn.[1]

Of course, we did not intend to convey the thought that the defense of the Goar suit devolved upon defendant whether or not the terms of its policy so provided; for, if its policy had covered accidental injuries to persons not in its employ merely about its works in Hennepin county and the defense of actions brought thereon, it could not be held to the defense of actions brought for such injuries received in another county. But we considered that the Goar complaint stated facts which charged the insured, the present plaintiff, with liability for the accidental injury of Mrs. Goar "while at or about" its works. In addition to what was stated in the opinion, the complaint also alleged that under the contract of construction with the village of Stephen the electric company undertook to supply electrical energy up to 1935 through the system it had defectively

[1]See page 116, supra.    [Reporter.]

and negligently constructed. We think it clear that the policy covers more than the mere construction of an electric system. A reasonable construction of the policy is that it covers accidental injury to persons other than its employes caused by its negligence in connection with the work or system it controls or operates no matter when constructed. For instance, if the company had owned or operated the system within the village when Mrs. Goar was injured, the policy would have covered the accident.

The petition is denied.