**CAPITOL INDEMNITY CORPORATION, a Wisconsin corporation, individually and as Assignee of Joseph M. Roblee, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, Defendant.**

**No. 68–C–162.**

United States District Court, W. D. Wisconsin.

Dec. 29, 1972.

Bruce Gillman, of Arthur, Tomlinson & Gillman, Madison, Wis., for plaintiff.

Phillip E. Crump, of Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action to recover on an amended money judgment rendered by the Circuit Court of Waukesha, Wisconsin, against the defendant's named insured and to recover expenses for attorney's fees allegedly incurred as a result of defendant's refusal to defend said action. Plaintiff's motion to amend the complaint and for summary judgment with respect to all three counts of the complaint is presently before this court.

I find that there is no genuine issue with respect to the facts which appear hereinafter under the heading of "Facts."

## FACTS

Plaintiff, Capitol Indemnity Corporation (hereinafter referred to as "Capitol") is an insurance corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin. Defendant, St. Paul Fire and Marine Insurance Company (hereinafter referred to as "S.P.I.") is an insurance corporation organized under the laws of Minnesota with its principal place of business in Minnesota.

Prior to August 27, 1963, Joseph M. Roblee was a certified public accountant practising as a sole proprietor under the name of Joseph M. Roblee and Company. Prior to August 27, 1963, Roblee prepared financial statements and audit reports which were subsequently found by the Circuit Court of Waukesha, Wisconsin, to be false and misleading.

On or about August 27, 1963, Roblee entered into a partnership with Earl D. Johnson for the practice of accounting, which partnership was known as Roblee-Johnson & Company. Said partnership had its principal office in Minnesota with two branch offices in Minnesota and two branch offices in Wisconsin. The written partnership agreement contained no express provision whether the partnership was assuming liabilities incurred by either Roblee or Johnson prior to its formation.

On or about December 15, 1963, defendant St. Paul Fire and Marine Insurance Company issued a three-year accountants' professional liability policy in the amount of $100,000 to the named insured, Roblee-Johnson and Company. This policy provided in part:

## INSURING AGREEMENTS

I. ACCOUNTANTS' PROFESSIONAL LIABILITY. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay for damages on account of professional services rendered or which should have been rendered by the Insured, their predecessors in business, or any other person for whose acts the Insured is legally liable in the performance of professional services for others in the Insured's professional capacity as accountants. (This Insuring Agreement includes as a part of the professional services of an accountant such legal liability arising from any claim or claims which may be brought about or contributed to by reason of: dishonesty, misrepresentation or fraud; services performed or advice given in relation to matters of taxation; breach of contract; civil libel, slander or defamation of character; committed or alleged to have been committed by the Insured in the ordinary course of their business as accountants.)

II. INVESTIGATION, DEFENSE, SETTLEMENT. As respects the insurance afforded by the other terms of this policy, the Company shall:

(A) defend any suit against the Insured alleging damages, even

if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as the Company deems expedient;

(B) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish any such bonds;

(C) pay all expenses incurred by the Company, all costs taxed against the Insured in any such suit and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;

(D) reimburse the Insured for all reasonable expenses incurred at the Company's request other than loss of earnings or loss and expense due to loss of time incurred by the Insured or by any employee of the Insured.

The Company agrees to pay the amounts incurred under this Insuring Agreement, except settlements of claims and suits, in addition the applicable limit of liability of this policy.

III. DEFINITION OF INSURED. The unqualified word "Insured" includes the named Insured and also any partner thereof while acting within the scope of his duties as such and the heirs, executors, administrators and assigns of each such Insured, in their capacity as such. Each employee of the named Insured shall be an additional Insured under this policy while acting within the scope of his duties as such. Any change among the partners of the named Insured, even though it results in changes in the name or business style of the named Insured, shall not affect the liability of this insurance, but such changes shall be reported to the Company promptly and in no event later than the next anniversary date of the policy.

\* \* \* \* \* \*

## CONDITIONS

A. NOTICE OF OCCURRENCE. Upon knowledge of any occurrence which may result in a claim, the Insured shall give written notice thereof to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtain information respecting the time, place and circumstances of the occurrence.

B. NOTICE OF CLAIM OR SUIT. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

\* \* \* \* \* \*

D. ACTION AGAINST COMPANY. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the in-

surance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

Said policy was issued by a Minnesota insurance agent and was countersigned in Minnesota.

As of February 1, 1964, Roblee allowed to lapse the professional liability policy issued by Fireman's Fund American Insurance Companies, which had insured him while doing business as Joseph M. Roblee and Company.

Prior to about September 19, 1964, neither Roblee nor any of his employees or associates had any knowledge of the Capitol claim nor of the circumstances which resulted in the claim. On or about September 18, 1964, Capitol notified Roblee by letter that it was asserting a claim based upon accounting services performed by Joseph M. Roblee and Company prior to August 27, 1963. This letter is addressed to Joseph M. Roblee & Company, attention of Roblee. It states in part: "This is to advise you that the undersigned . . . represent Capitol Indemnity Corporation in their claim against *your* company for damages resulting from its reliance on various financial statements which were prepared by *your* accountants." (Emphasis added.)

On or about November 20, 1964, Capitol notified Johnson by letter that it was asserting a claim based upon the accounting services performed by Joseph M. Roblee & Company prior to August 27, 1963. The letter refers to Johnson as a registered principal and partner of Roblee-Johnson and Company, to said partnership as the "successor" of Joseph M. Roblee & Company, and further states "We have been informed that your firm carries the liability insurance which covers the claim in question."

On December 9, 1964, Roblee sent a copy of the September 18, 1964, Capitol letter to S.P.I. In an accompanying letter Roblee's attorney noted that Capitol's letter had been addressed to Joseph M. Roblee & Company, and further stated:

It is my understanding that your Company has in effect an Accountants' Professional Liability Policy No. 566LG8836, issued under date of December 15, 1963. The correct name of the insured, of course, is Roblee-Johnson & Company, which fact apparently was not known to the attorneys writing the letter.

It is the purpose of this letter to give you notice, under the terms of your policy, of this alleged claim.

The letter, photocopy of which is enclosed, was the first information of any kind received relative to same.

Receipt of this letter by S.P.I. was acknowledged on December 23 and 29, 1964.

Johnson never forwarded to S.P.I. Capitol's letter of November 20, 1964, nor any other pleadings relating to Capitol's claim.

Between December 30, 1964, and October 29, 1965, Capitol's attorney met with S.P.I.'s attorney on several occasions to discuss Capitol's claim. At least twice Capitol's attorney made an authorized offer to settle said claim for substantially less than $100,000 but received either no response or a rejection from S.P.I.'s attorney.

On February 9, 1966, S.P.I.'s claim attorney informed Capitol's attorney that S.P.I. was denying coverage of Roblee. On February 24, 1966, S.P.I.'s claims attorney sent a letter to Roblee's attorney stating that S.P.I. denied that the policy covered the Capitol claim because of the absence of an express provision in the partnership agreement of Roblee-Johnson and Company assuming the liabilities of Joseph M. Roblee & Company.

A summons for an action in Circuit Court was duly served upon S.P.I. on April 13, 1966, upon Roblee on April 27,

1966, and upon Johnson on July 7, 1966. The action was commenced, as Wisconsin statutes permitted, by the service of these summonses without complaints. The caption of each summons named the following defendants:

JIMMY N. MORRIS; JOSEPH M. ROBLEE and JOHN W. ROBLEE, individually and/or d/b/a JOSEPH M. ROBLEE & CO., and as predecessors in business of JOSEPH M. ROBLEE and EARL D. JOHNSON, individually and/or as co-partners, d/b/a ROBLEE–JOHNSON & CO. or EARL JOHNSON & CO.; JOSEPH M. ROBLEE and EARL D. JOHNSON, individually and/or as co-partners d/b/a ROBLEE–JOHNSON & CO. or EARL JOHNSON & CO.; FIREMAN's FUND INSURANCE COMPANY, a foreign corporation, successor to FIREMAN'S FUND INDEMNITY COMPANY, a foreign corporation; and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a foreign corporation.

Although S.P.I. served a demand for a complaint sometime in May, 1966, it never received a complaint from anyone.

On May 25, 1966, Capitol's attorney wrote to S.P.I.'s attorneys informing them that the reason S.P.I. had been made a defendant in the state court action was that Capitol believed itself to be a third party beneficiary of S.P.I.'s policy contract with Roblee-Johnson & Company; that Capitol intended to seek a declaratory judgment on the point; that it was possible that an exhange of briefs could dispose of this question without a judicial decision; and that if Capitol became persuaded that S.P.I. had been improperly joined, Capitol would be willing to stipulate to S.P.I.'s dismissal.

On September 29, 1966, the deposition of Roblee was taken in the state court action; S.P.I.'s attorney appeared at the taking of the deposition.

On or about October 6, 1966, a stipulation to dismiss S.P.I. from the state court action was prepared by Capitol, signed by the attorneys for Capitol, S.P.

I., Joseph M. Roblee, and Fireman's Fund Insurance Company, and filed.

On October 19, 1966, the complaint in the state court action was verified. Shown in the title of the action as defendants were:

Jimmy N. Morris, Joseph M. Roblee, and John W. Roblee, individually and/or, d/b/a Joseph M. Roblee & Co., and as predecessors in business of Joseph M. Roblee and Earl D. Johnson, individually and/or as co-partners, d/b/a Roblee-Johnson & Co. or Earl Johnson & Co., Joseph M. Roblee and Earl D. Johnson, individually and/or as co-partners d/b/a Roblee-Johnson & Co., or Earl Johnson & Co., Fireman's Fund Insurance Company, a foreign corporation, successor to Fireman's Fund Indemnity Company, a foreign corporation, and St. Paul Fire and Marine Insurance Company, a foreign corporation.

Capitol's attorney in preparing the complaint inadvertently neglected to delete the name of S.P.I. as party defendant in the state court action even though the action had been dismissed as to S.P.I. Said complaint contained the following allegation and prayer for relief:

5. That the defendant, EARL D. JOHNSON, upon information and belief, is an adult resident of Superior, Douglas County, Wisconsin, and at all of the times herein mentioned, was a practicing Certified Public Accountant under the laws of the State of Wisconsin, and a co-partner of and successor to JOSEPH M. ROBLEE, d/b/a JOSEPH M. ROBLEE AND COMPANY, the successor-partnership, which, upon information and belief, assumed all of the liabilities of JOSEPH M. ROBLEE AND COMPANY, was known as ROBLEE, JOHNSON & COMPANY.

\* \* \* \* \* \*

WHEREFORE, the plaintiff demands a money judgment against the above-named defendants, and each of them, jointly and severally, in the sum of $121,961.98, together with interest

thereon, plus the costs and disbursements of this action, including attorneys fees, and for such other and further relief as may be just and equitable in the premises.

On December 11, 1966, Johnson died.

On March 18, 1968, an attorney for Roblee advised S.P.I.'s attorney that the trial in state court had been set for May 7, 1968; that S.P.I. was being afforded another opportunity to consider its position as an "insurer of Mr. Roblee and the successor partnerships, Roblee-Johnson & Co. and Earl D. Johnson and their respective partners"; and that Roblee was considering means to protect himself from Capitol's claim for damages. On March 21, 1968, S.P.I.'s attorney requested an explanation of what means of protection Roblee was contemplating. In fact, Roblee hired William J. Stemper and Richard A. McDermott to defend him in the state court action. These attorneys did not represent Roblee-Johnson and Company.

On or about May 3, 1968, Roblee assigned to plaintiff Capitol his rights and causes of action against Fireman's Fund Insurance Company and S.P.I. for their denial of coverage under the policies, for their failure and refusal to defend Roblee in the action commenced by plaintiff in the Circuit Court for Waukesha County, and for their refusal to settle the claim asserted in said action within policy limits.[1] Part of the consideration for said assignment was the plaintiff Capitol's promise to release Roblee's homestead from the lien of any judgment which might be entered in plaintiff's favor in the action then pending in Circuit Court. Capitol subsequently did release Roblee's homestead from the lien of the judgment entered.

During the state trial S.P.I.'s attorney was present as an observer. Roblee was represented by the attorneys he had hired (incurring expenses of $5,076.19 for fees and disbursements). At no time did anyone enter any kind of appearance or file any responsive pleadings on behalf of Johnson or Roblee-Johnson & Company.

The state court action was tried to the court. The liability of Roblee-Johnson & Company for acts of Joseph M. Roblee or employees of Joseph M. Roblee & Company prior to the formation of the partnership was neither litigated nor was it the subject of any proof at trial. The written decision of the state court did not refer to this issue. S.P.I. did not assert that the state court lacked jurisdiction over any named defendant or that any judgment rendered against any named defendant would be invalid.

On August 23, 1968, the state court decided that Capitol was entitled to recover from Roblee $119,368.21, and ordered that judgment might be so entered. Thereafter, Capitol petitioned the court to amend the judgment stating that through plaintiff's "inadvertence and excusable neglect", the judgment prepared by plaintiff had failed to reflect that Roblee was also sued in his capacity as copartner of the partnership known as Roblee-Johnson & Company;

1. The assignment states:

For valuable consideration received, I, JOSEPH M. ROBLEE, of Elm Grove, Wisconsin, do hereby assign to CAPITOL INDEMNITY CORPORATION, of Madison, Wisconsin, any and all rights, remedies, claims and/or causes of action I now have or may hereafter acquire against Firemans Fund Insurance Company and/or St. Paul Fire and Marine Insurance Company, as the liability insurance carriers under the policies attached hereto and made a part hereof, for their denying coverage under said policies, their failure and refusal to defend the undersigned as a Defendant in an action commenced by CAPITOL INDEMNITY CORPORATION and still pending in the Circuit Court for Waukesha County, and for their failure to settle (within policy limits) the claim asserted against the undersigned in the aforesaid action,

And I hereby authorize CAPITOL INDEMNITY CORPORATION to commence and prosecute any and all actions to collect the claims assigned herein, and to take any and all legal or other steps deemed proper or necessary, with the same force and effect as I could.

that Roblee-Johnson & Company is a judgment *debtor; and that the liability* of Roblee and Roblee-Johnson & Company is joint and several. The petition further stated that the partnership entity had been served (through service of the summons and complaint on the principal partner Johnson) but that no appearance was made nor were responsive pleadings filed. Finally, the petitioner stated that he "is informed and verily believes that no rights of third parties have intervened since the entry of the aforesaid judgment and that no rights of any third parties will be prejudiced by the requested amendments." Roblee waived notice of the petition and hearing thereon. On September 23, 1968, the state court ordered and adjudged that Capitol recover $119,368.21 in damages, jointly and severally from: (a) Joseph M. Roblee, as sole proprietor doing business as Joseph M. Roblee & Company, and as a co-partner of Roblee-Johnson & Company, a co-partnership; and (b) Roblee-Johnson & Company, a co-partnership.

S.P.I. then attempted to take an appeal from said judgment as an aggrieved party within the meaning of Wis.Stat. § 274.10; on April 7, 1969, the attempted appeal was dismissed by an order without opinion of the Wisconsin Supreme Court.

S.P.I. also filed a petition with the Circuit Court of Waukesha County requesting leave to intervene in the action and that the amended judgment be vacated and set aside or that it be allowed to appeal said judgment as a party defendant. The Circuit Court denied said petition and S.P.I. took an appeal to the Wisconsin Supreme Court. On April 3, 1970, the Wisconsin Supreme Court affirmed the decision of the Circuit Court and the time for rehearing of said decision has expired without S.P.I. filing a motion for rehearing. The Wisconsin Supreme Court noted the broad discretion of the trial court to grant or deny leave to intervene and concluded that a denial was appropriate here where S.P.I. could have defended the insured without

losing its opportunity to deny coverage but instead chose to do nothing and gamble that its insured would not be held liable. The Wisconsin Supreme Court emphasized that S.P.I. was once in the suit as a party but had elected to get out.

S.P.I. has refused to pay or satisfy any part of the amended judgment.

## OPINION

■ Plaintiff has moved for leave to file an amended complaint. Rule 15(a) of the Federal Rules of Civil Procedure provides: "leave [to amend] shall be freely given when justice so requires." Rule 15(a), Fed.R.Civ.P. Absent prejudice to the opposing party, ordinarily leave should be granted. 1A Barron & Holtzoff, *Federal Practice & Procedure* § 442 (1960). I conclude that S.P.I. will not be prejudiced if plaintiff's motion is granted and accordingly allow plaintiff to amend its complaint. I will treat the new or different allegations of the amended complaint as having been denied by defendant's answer heretofore served and filed.

Turning to plaintiff's motion for summary judgment, each of the three counts of the amended complaint will be considered separately below.

### *Count I*

Count I alleges that by virtue of the state court judgment adjudging Roblee and Roblee-Johnson & Company jointly and severally liable to Capitol, Capitol is entitled to recover $100,000 under the insurance policy issued by S.P.I. (the limit of liability under said policy) and that S.P.I. has refused to pay said $100,000. In order to establish that it is entitled to summary judgment on Count I, plaintiff Capitol must persuade this court that it is entitled to proceed directly against the defendant insurer upon the insurance policy and that the amended judgment of the state court is entitled to full faith and credit here.

■ After obtaining a judgment against a party insured under a liability

policy, an injured party may proceed directly on the policy against the insurer if the terms of the policy so permit. J. Appleman, 8 Insurance Law & Practice § 4831 (1942) [hereinafter "Appleman, Insurance"]; R. Long, 1 Law of Liability Insurance §§ 1.06–1.08 (1966) [hereinafter "Long, Liability Insurance"]; 46 C.J.S. Insurance § 1191 (1946). The insurance policy at bar is a liability policy. See Long, 1 Liability Insurance § 1.07. Under Condition D of the policy, having obtained a final judgment against the insured (Roblee-Johnson & Company), Capitol is authorized to proceed directly against S.P.I., provided that the insured has fully complied with the other terms of the policy. See Long, 1 Liability Insurance § 1.08.

■ Condition B of the policy requires the insured to forward to the insurer any demand, notice or summons received if claim is made or suit is brought against the insured. Here the insured did not forward the summons and other process received. However, prior to the service of these documents upon the insured, the insurer unequivocally repudiated its promise to defend. Therefore, it could no longer demand that the insured comply with these notice provisions. *See* St. Louis Beef Co. v. Casualty Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1906).

However, prior to S.P.I.'s repudiation, Capitol sent letters to Roblee and Johnson stating its claim. Roblee's letter was forwarded to S.P.I. but Johnson's was not. Johnson's failure to forward this letter constitutes a breach of Condition B. Nonetheless, if S.P.I. had both actual notice and a full opportunity to defend this action, then recovery should not be denied because of this minor breach. *See generally* Long, 2 Liability Insurance § 13.18.

In analyzing whether S.P.I. had actual notice of Capitol's claim against Roblee-Johnson & Company (as distinguished from Roblee) I shall briefly review some of the facts set out more fully in the section entitled "facts" above:

1. S.P.I. first learned of Capitol's claim when it received a letter from Roblee's attorney accompanied by a copy of Capitol's letter to Roblee. Capitol's letter is ambiguous with respect to whether the asserted claim lies against Roblee & Company or Roblee-Johnson & Company or both. Roblee's attorney's letter clearly articulates the position which Roblee has consistently maintained, that Capitol's claim is against the insured, Roblee-Johnson & Company.

2. Subsequently Capitol's attorney met with S.P.I.'s attorney on several occasions, at which time Capitol made settlement offers. However, there is nothing in the record to indicate whether Capitol's attorney specifically informed S.P.I.'s attorney that Capitol's claim was not only against Roblee & Company but also against the named insured Roblee-Johnson & Company.

3. In a later letter from S.P.I.'s attorney to Roblee's attorney, S.P.I. explained that it was denying coverage because the named insured, Roblee-Johnson & Company, had not expressly assumed the liabilities of Roblee & Company. This letter indicates that S.P.I. was aware of Roblee's contention that the claim was against Roblee-Johnson & Company, but does not elucidate what S.P.I.'s understanding of Capitol's. intentions was.

4. In August, 1966, S.P.I. was served with a summons, the caption of which named among others, Roblee and Johnson as defendants, doing business as Roblee-Johnson & Company. Roblee & Company is identified in said caption as the predecessor in business of Roblee-Johnson & Company.

■ Prior to the service of the summons upon S.P.I., it is possible, although improbable, that although S.P.I. was

aware that Roblee (either as an individual or as a partner of Roblee-Johnson & Company) was asserting that Roblee & Company was a "predecessor in business" of Roblee-Johnson & Company, S. P.I. nonetheless believed that Capitol intended only to assert its claim against Roblee & Company. However, I find that after receiving the summons, S.P.I. had actual notice that Capitol was asserting a claim against Roblee-Johnson & Company for the acts of its predecessor. I further find that S.P.I. had ample opportunity to defend this suit, which was not tried for more than 1½ years after the service of the summons upon S.P.I. Although at the time of service of the summons upon it, S.P.I. had already unequivocally denied coverage, it must bear the consequences of its somewhat precipitous decision-making. I note that Roblee again expressed his willingness to be defended by S.P.I. more than a year after the service of the summons on S.P.I. (It is not clear from the record, however, whether he intended to express his willingness that the partnership be defended by S.P.I.) Finally, in light of the entire sequence of events as described in the record, I cannot find that Capitol's stipulation to dismiss S. P.I. from the action as a party-defendant led S.P.I. reasonably to believe that no claim was to be asserted against its insured so as to dissipate the legal effect of the prior actual notice which S.P.I. enjoyed.

Having concluded that Capitol is entitled to proceed directly against S.P.I., I consider the remaining question whether the amended judgment against S.P.I.'s insured is entitled to full faith and credit in this court. Defendant urges that the amended judgment was procured by extrinsic fraud, and particularly that the state court would not have amended the judgment had it been aware of the effect of said amendment upon S.P.I. Plaintiff replies that defendant S.P.I.'s failure properly to allege this affirmative defense precludes its consideration, and that in any event the state court judgment is entitled to full faith and credit.

Rule 8(c) provides in part:

In pleading to a preceding pleading, a party shall set forth affirmatively . . . fraud. . . . Rule 8(c), Fed.R.Civ.P.

The purpose of this rule is to give the plaintiff fair notice of the nature of the affirmative defense. 1A Barron & Holtzoff, Federal Practice & Procedure § 279. Rule 9(b) provides in part:

In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity. Rule 9(b), Fed.R.Civ.P.

Defendant here did not plead any affirmative defenses in its answer. Paragraph 9 simply alleges on information and belief that the amended judgment is invalid and without support. Defendant's contention that the petition submitted by Capitol to the state court, seeking amendment of the judgment there, constituted fraud in procurement of a judgment first appears in this court in defendant's brief in opposition to plaintiff's motion for summary judgment. Clearly defendant's averment in paragraph 9 does not satisfy either Rule 8(c) or 9(b).

However, even assuming that defendant had properly plead this affirmative defense, it would not have barred summary judgment for the plaintiff on Count I. In the ensuing discussion, I will treat the contention as if it had been raised properly as an affirmative defense.

28 U.S.C. § 1738 provides in part:

The records and judicial proceedings of any court of any such State . . ., or copies thereof, shall be . . . admitted in other courts within the United States . . . by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such . . . records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within

the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

Although the copies of the decision and judgment of the state court have not been authenticated in the manner prescribed *supra,* the defendant has admitted their authenticity.

■ Under 28 U.S.C. § 1738, the amended judgment must be given the same effect and credit as it would receive in the courts of Wisconsin, where it was rendered. Wisconsin law must govern the available grounds for collateral attack. *See* 50 C.J.S. Judgments § 900. Defendant argues that plaintiff fraudulently procured the amended judgment. The Wisconsin Supreme Court has stated:

In Zrimsek v. American Automobile Ins. Co. (1959), 8 Wis.2d 1, 3, 98 N. W.2d 383, 384, we defined a collateral attack as:

". . . an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it."

In that same case, *supra,* page 3, 98 N.W.2d page 385, we adhered to the rule as stated in 49 C.J.S. Judgments § 401, page 792:

" 'A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except . . . for fraud in its procurement.' "

\* \* \* \* \* \*

"It is settled law that a judgment of a court which had jurisdiction of the subject matter of the action cannot be impeached and is immune from and not subject to collateral attack, even though patently erroneous." Werner v. Riemer (1949), 255 Wis. 386, 403, 39 N.W.2d 457, 466, 39 N.W.2d 917. Kriesel v. Kriesel, 35 Wis.2d 134, 138–139, 150 N.W.2d 416, 419 (1966).

It is not necessary here for me to specify the kind of fraud which warrants the extraordinary relief of denying the effect of a judgment, often inaccurately described as "extrinsic fraud." *See* Hartenstein v. Hartenstein, 18 Wis.2d 505, 517, n. 6, 118 N.W.2d 881 (1962); Werner v. Riemer, 255 Wis. 386, 405, 39 N.W.2d 457, 39 N.W.2d 917 (1949). In the instant case, I conclude that the record does not support a finding that there is a genuine issue for trial as to whether fraud, either "extrinsic" or "intrinsic," was perpetrated on the state court.

■ The burden of proof rests upon the party requesting summary judgment. Nonetheless, the movant need only prove up those issues upon which it has the burden of proof at trial. At trial, the burden of establishing an affirmative defense rests upon the defendant. Therefore, at this point in the proceedings, plaintiff need not establish that it did not fraudulently procure the amended judgment. Instead, defendant must establish by affidavit or other evidence that its affirmative defense presents a genuine issue of material fact for trial. Rule 56(c), (e), Fed.R.Civ.P.

The only evidence submitted by the defendant is plaintiff's petition to the state court requesting the amendment. In said petition plaintiff alleged: "[it] is informed and verily believes that no rights of third parties have intervened since the entry of the aforesaid judgment and that no rights of any third party will be prejudiced by the requested amendments." Defendant S.P.I. contends that this statement constitutes a willful false representation because defendant is a third party; because the amendment of the judgment to include defendant's named insured harmed defendant by exposing it to liability on the

insurance policy; and because plaintiff must have known that the defendant would be so prejudiced. Defendant further contends that had it not been for this false representation, the state court would not have amended the judgment. I conclude that with this evidence defendant has not created a genuine issue for trial. First, the language of the petition is ambiguous; the second reference to "third parties" may have been intended as shorthand for the first reference to "third parties," that is, third parties whose rights intervened subsequent to the judgment. Defendant had not so intervened. However, assuming the second reference to a "third party" may include one which has not intervened, defendant has introduced no factual evidence to support its claim that the state trial judge interpreted the petition in the manner suggested by defendant; that the judge was unaware of the effect of the amendment upon defendant's interests; or that the judge would not have amended the judgment had plaintiff not made this representation.

I make no finding whether the state trial judge was aware, at the time the judgment was amended, that the amendment would affect S.P.I. However, in holding now that S.P.I. has made no factual showing in support of its affirmative defense in this court, I am persuaded that no injustice is being done, inasmuch as the S.P.I. appeared in the caption of the state court lawsuit and S.P.I.'s attorney was present at the trial as an observer.

Because defendant has not created a genuine issue for trial as to whether the amended judgment was procured by fraud, I conclude that said judgment is entitled to full faith and credit in this court. I further conclude that since plaintiff Capitol may proceed directly against defendant S.P.I. on the insurance policy, Capitol is entitled to recover $100,000 (the policy limit) of the $119,368.21 state judgment.

*Count II*

Count II alleges that although Roblee individually and on behalf of Roblee-Johnson & Company satisfied the notice conditions of the policy, thereby tendering the defense of the state court action to S.P.I., S.P.I. wrongfully refused to defend the suit against "Defendant's insured, Joseph M. Roblee"; that the defendant S.P.I. thereby breached the insurance contract and proximately caused Roblee to retain counsel for his defense at his own expense; and that Roblee has assigned to plaintiff Capitol all of his causes of action against the defendant S.P.I., including the cause set forth in Count II.

In choosing the state whose law is to be applied in construing this contract, I am bound in this diversity action to apply Wisconsin's choice-of-law rule. Klaxon Company v. Stentor Mfg. Co., Inc., 313 U.S. 487 (1941). In Estate of Knippel, 7 Wis.2d 335, 342, 96 N.W.2d 514, 517 (1959), the Wisconsin Supreme Court stated:

> [T]he choice of law governing validity and interpretation (of contracts) is basically a question of the intention of the parties except where their intention is to commit a fraud on the law. In the absence of evidence to the contrary, the law of the place of making the contract is presumed to be intended unless the place of performance be different. In the latter instance there is a rebuttable presumption that the law of the place of performance controls. . . . *Id.*

In this record there is an absence of evidence of any conscious intention of the parties that the law of Minnesota or of Wisconsin or of both states should govern their contract.

The Wisconsin Supreme Court has explicitly adopted the grouping-of-contacts approach for the resolution of conflicts questions pertaining to the rights and duties of parties arising under a contract. Urhammer v. Olson, 39 Wis.2d 447, 450, 159 N.W.2d 688 (1967).

Contacts to be considered include: "(a) the place of contracting, (b) the place of negotiations of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Haines v. Mid-Century Ins. Co., 47 Wis.2d 442, 446, 177 N.W.2d 328, 330 (1969), citing Restatement, Conflicts of Laws 2d, Proposed Official Draft, Part II, p. 200, § 188.

In addition, the special provisions of § 193 of the Restatement must be considered:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless, with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied. *Haines, supra* at 448 [177 N.W.2d 328] citing Restatement, Conflicts of Laws 2d, *supra* at p. 243, § 193.

■ Neither party here has addressed in its briefs the conflicts question. The record reveals only that the policy was issued by a Minnesota insurance agent; that it was countersigned in Minnesota; that it was to be "performed" in both Minnesota and Wisconsin (the insurance policy lists the principal office of the insured at an address in Minnesota, with four branch offices, two in Minnesota and two in Wisconsin); that the defendant insurance corporation is organized under the laws of Minnesota with its principal place of business in Minnesota; and that the address of the branch office entitled Roblee-Johnson & Company is in Milwaukee, Wisconsin. Because the principal office of the insured is located in Minnesota with the branch offices evenly divided between Minnesota and Wisconsin, for the purposes of this motion only I conclude that the principal location of the insured risk was in Minnesota. I also note that the place of contracting is in Minnesota and that the principal place of business for both the insured and the insurer, the two parties to the insurance contract, is in Minnesota, in concluding for the purpose of this motion only that Minnesota law should govern.

■ I have already concluded that Roblee-Johnson & Company satisfied the notice conditions of the policy. Therefore, I now turn to the existence and nature of S.P.I.'s duty to defend under Clause II of the insurance contract. Clause II is a standard provision in most liability insurance policies, Annot. 50 A.L.R.2d 458, 463, and provides in part: "[T]he Company shall . . . defend any suit against the Insured alleging damages, even if such suit is groundless, false, or fraudulent." Under such a provision the duty of the liability insurer to defend the insured turns primarily upon the allegations of the complaint filed by the injured party:

> If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume that defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation. Annot. 50 A.L.R.2d 456, 463–64; *See* Minnesota Electric Distributing Co. v. United States Fidelity and Guaranty Co., 173 Minn. 114, 216 N.W. 784 (1927).

Where the complaint does not allege facts sufficient to bring the action clearly within the scope of the insurance contract, the insurer is obliged to defend whenever the claim alleged might possibly fall within the policy's coverage. Doubts about coverage must be resolved

by the insurer in favor of the insured.[1] Bituminous Casualty Corp. v. Travelers Ins. Co., 122 F.Supp. 197 (D.C.Minn. 1954); Annot. 50 A.L.R.2d 458, 504.

The complaint in the state action here alleged, among other things, that the "successor partnership," known as Roblee-Johnson & Company, had assumed all of the liabilities of Roblee & Company and that the liability of Roblee & Company "was, for valuable consideration, expressly and/or impliedly assumed by the defendant, Earl M. Johnson, as the copartner of and successor to the defendant, Joseph M. Roblee, then a sole proprietor d/b/a Joseph M. Roblee. . . ." The complaint further alleges that the plaintiff suffered damages and demands a money judgment against the "above-named defendants [including Roblee-Johnson & Company], and each of them, jointly and severally." I conclude that because the claim stated in the complaint falls within the coverage of the policy, S.P.I. was obliged to defend the state court action.

S.P.I. claims that its duty to defend never arose because it never received a copy of the complaint. This contention is without merit. As discussed above, S.P.I. unequivocally repudiated its obligation to defend prior to service of a summons in this action. It would be inequitable to allow S.P.I. to avoid its contractual obligation to defend the insured by creating the impression that it would be futile for the insured to forward the complaint.

■■ Count II is brought to recover damages for S.P.I.'s breach of its duty to defend. S.P.I.'s unwarranted refusal to defend this suit relieved the insured from its contractual obligation to allow S.P.I. to control its defense. The insured could have conducted its own defense, later recovering from S.P.I. the expenses of litigation (both costs and attorneys' fees). *See* Appleman, 7A Insurance § 4691 (1962). However, since Capitol was not in privity with S.P.I., in order for Capitol to recover these expenses, it is necessary that Capitol have obtained an assignment of the contractual rights of the insured partnership. It is unclear on the face of the assignment whether Roblee undertook to assign a non-existent "right" of Roblee & Company or whether, acting as a copartner, he assigned existent rights of the insured partnership. Because of this ambiguity, a genuine issue of material fact remains.

Moreover, under the contract, S.P.I. was obliged to defend the insured, Roblee-Johnson & Company, not the predecessor of the insured. *See* Clause II(a) *supra* at p. 402. It is undisputed that no one defended the insured in the state cause of action. The attorneys were re-

1. As stated by Judge Learned Hand in Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2nd Cir. 1949):

"Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases . . . it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer. There may be cases, however, in which that question will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defence of a claim which it turns out the insurer has promised to pay. We do not believe that, had the question been presented to the parties in advance, they would have agreed that the promise to defend did not include all occasions in which the insurer eventually becomes liable to pay . . . . When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. . . . It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover." *Id.* at 752–753.

tained by Roblee for his personal defense as a party defendant in the state action. In the cases cited by plaintiff, e.g. Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198 (1958); Space Conditioning, Inc. v. Insurance Co. of No. Amer., 294 F.Supp. 1290 (E.D.Mich.1968), the attorneys were retained for the defense of the insured.

For these reasons, I conclude that plaintiff Capitol is not entitled to summary judgment on Count II.

### Count III

Count III alleges that S.P.I., in bad faith, rejected Capitol's settlement offers of substantially less than the $100,000 limit of the policy.

For the reasons discussed *supra* in Count II, Minnesota law is applicable.

Plaintiff here has established by uncontroverted affidavits that plaintiff's attorney made several offers to settle its claim for substantially less than $100,000; that plaintiff made available to defendant's attorney for inspection the records in question in the state action; that said offers were all refused by defendant; and that defendant subsequently informed plaintiff that it was denying coverage of the claim.

From these rather scanty facts, it is possible to draw two factual inferences: (1) that at the time S.P.I. refused the settlement offers, it had already undertaken the defense of Capitol's claim and that it was only later that S.P.I. decided to deny coverage; or (2) that S.P.I.'s refusals to settle were motivated by its belief that the claim was not covered by the policy, which belief was only later communicated to Capitol and Roblee. I conclude that genuine issues of material fact remain as to which of these inferences is correct.

 Assuming that further factual development justifies a finding that S.P.I. had undertaken the defense of Capitol's claim at the time of its refusal of the settlement offer, the rule in Minnesota is that the claimant must prove that the insurer acted in bad faith in considering and rejecting offers to compromise the claim within policy limits. Peterson v. American Family Mutual Insurance Co., 280 Minn. 482, 160 N.W.2d 541 (1968); Larson v. Anchor Casualty Co., 249 Minn. 339, 340, 82 N.W.2d 376, 378 (1947); *see generally* Annot., 40 A.L.R.2d 168, 179–79. Among the relevant factors to be considered are: (1) whether the insurer made a prompt and complete investigation of the claim; (2) whether the insurer informed the insured of the offer and of the possibilities of an excess verdict; (3) whether the insurer in good faith believed that either the insured was not liable or that the proposed settlement was greater than the amount the jury would award as damages; and (4) whether an objective assessment of the evidence justifies the position adopted by the insurer. *See Herges, supra* at 1162–1164; *see generally,* Annot. 40 A.L.R.2d 168. More facts are needed here with respect to all of these factors.

On the other hand, assuming that further factual development justifies a finding that S.P.I. never really undertook the defense of the insured and that its refusal to accept settlement offers was the result of its intention to deny coverage, it is more difficult to ascertain the applicable law. The Minnesota Supreme Court had not yet ruled on this question, as far as I am aware, and there are three lines of authority in other jurisdictions.

 Recognizing that ordinarily an insurer's breach of its duty to defend subjects it to liability for the judgment against the insured up to the policy limits as well as the insured's litigation expenses, one group of courts nonetheless holds that where the wrongful denial of coverage motivates both a refusal to defend and the rejection of a reasonable offer to settle within policy limits, the conjunction of wrongs requires payment of the excess. Blakely v. American Employer's Ins. Co., 424 F.2d 728 (5th Cir. 1970); Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958); *see* Her-

man v. Western Casualty & Surety Co., 271 F.Supp. 502 (E.D.Mo.1967), aff'd 405 F.2d 121 (8 Cir.). Following *Comunale supra,* these courts carefully distinguish the express contractual duty of the insurer to defend and the insurer's implied duty to accept an offer of settlement within policy limits. Noting that most cases deal with the insurer's failure to settle after assuming the defense of the action, the courts emphasize that the only reason the insurer here is not in control is because of its wrongful refusal to defend the insured and that the breach of its express obligation to defend does not release it from its implied duty to consider the interest of the insured in a settlement offer. *Comunale, supra,* 68 A.L.R. 2d at 890. Finally these courts reason:

> An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. Certainly an insurer who not only rejected a reasonable offer of settlement but also wrongfully refused to defend should be in no better position than if it had assumed the defense and then declined to settle. The insurer should not be permitted to profit by its own wrong. *Comunale, supra,* 50 Cal.2d at 660, 328 P.2d at 202, 68 A.L.R.2d at 890.

At the other extreme are the courts which flatly hold that the insurer is not liable in excess of the policy if it refuses a settlement offer because of its wrongful decision to deny coverage. Reasoning that the action for the amount in excess of the policy is an action in tort for damages caused by the insurer's bad faith performance of contractual duties, the courts hold that if the insurer has not undertaken to perform these duties, it could not have performed them tortiously. *See* Fidelity & Casualty Co. of New York v. Gault, 196 F.2d 329 (5th Cir. 1952). It appears that this result

exposes to the greater liability the insurer who at least recognizes his duty, but then performs it in bad faith. However, it should be noted that the insured who has received prompt and clear notification from the insurer of a denial of coverage may be in a better position to protect himself than an insured whose defense has been preempted by an insurer who then fails to consider the interests of the insured.

A third approach holds an insurer liable in excess of policy limits only when it is guilty of bad faith in refusing to defend. Beck v. Pennsylvania National Mutual Cas. Ins. Co., 429 F.2d 813, 819 (5th Cir. 1970); State Farm Mutual Ins. Co. v. Skaggs, 251 F.2d 356, 359 (10th Cir. 1957); Luke v. American Family Mutual Ins. Co., 325 F.Supp. 1330, 1333 (D.S.D.1971); Dairyland Ins. Co. v. Hawkins, 292 F.Supp. 947, 952 (S.D.Iowa 1968).

Because of the uncertainty on the record as to the circumstances surrounding the settlement offers, I do not attempt to decide which line of cases the Minnesota Supreme Court would follow if confronted with this question. However, I note that since Minnesota has shown some sympathy towards liability insurers by adopting the rule requiring claimants to show the bad faith of insurers in refusing to settle rather than negligence as in other jurisdictions, it may be that the third approach would be most consistent with Minnesota's assessment of policy considerations. *See Luke, supra,* 325 F.Supp. at 1333–1334. If this should be the result, general issues of material fact remain as to the good or bad faith of S.P.I. in denying coverage.

 Also, it is not clear from the record whether Capitol's offer was to settle its claim against Roblee, or Roblee-Johnson & Co., or both. S.P.I.'s implied duty to settle extends only to settlement offers on claims against its insured, Roblee-Johnson & Company. Furthermore, although an insured's right to amounts in excess of policy lim-

**416**

its is assignable, *Comunale, supra*; Long, 1 Liability Insurance § 5.20, as discussed *supra* with respect to Count II, there are genuine issues of fact as to whether Capitol is the assignee of the rights of Roblee-Johnson & Company, the insured, or only those of Roblee.

For all these reasons, I conclude that the plaintiff Capitol is not entitled to summary judgment on Count III.

### ORDER

Accordingly, on the basis of the entire record herein and for the reasons stated above, it is hereby ordered that plaintiff's motion for leave to amend its complaint is granted; that plaintiff's motion for summary judgment is granted with respect to Count I and denied with respect to Counts II and III of the amended complaint; and that judgment may be entered for the plaintiff in the amount of $100,000, together with interest.